BERKEY & GAY FURNITURE CO. *v.* VALLEY CITY
MILLING CO.

1. EASEMENTS—EVIDENCE—DEEDS—MERGER—INTENT.
    In proceedings to establish an easement in a certain alley
    or way, a reservation contained in an ancient deed, sub-
    sequently obliterated by merger, was of evidential value,
    not as showing that complainants have a record title to
    the easement, but as indicating beyond peradventure that
    the owners of the property at that time believed that the
    beneficial use of the land could only be enjoyed by the
    several owners thereof if a common way were kept open.

2. SAME—ADVERSE POSSESSION.
    Where the record shows that from the earliest period within
    the memory of living witnesses and during all the inter-
    vening time down to the present, complainants and others
    had used said way, *held*, to have been as of right and not
    by sufferance.

3. SAME—ERECTION OF SIGN—EFFECT.
    The erection and maintenance of a sign by defendant to
    the effect that the road was a private drive and must be
    used at the risk of the user, after the way had been in
    use for more than a quarter of a century, was not for
    the purpose of asserting defendant's dominion over it, but
    rather to avoid liability for possible injury upon it.

4. SAME—LICENSE—USER—PRESCRIPTION—ADVERSE POSSESSION.
    A user, having its inception in license or favor, cannot ripen
    into a prescriptive right.

5. SAME—ADVERSE USE—LICENSE.
    Where complainants or their grantors purchased the prem-
    ises as abutting on the way, then called a street in the
    deeds, and the user had existed for more than a quarter
    of a century, it cannot be claimed that the user in its
    inception was through license or favor.

6. SAME—ESTOPPEL—ADVERSE POSSESSION.
    The wrongful invasion of the way to the north of com-
    plainant by others, *held*, not to prevent complainant from

establishing its right to have the way to the south kept open.

7. SAME—LOCATION OF WAY—DEFENSES.

Where the way sought to be established by complainants was, by reason of defendant's building, pushed farther to the west, the location would not be controlling, as the new way would take the place of the former one.

8. SAME—EXTENT OF INTERFERENCE—DEFENSES.

Where defendant's encroachment upon the way, which was used extensively by manufacturing establishments, narrowed it from approximately 30 feet to about 14 feet wide, *held*, to be a serious interference with the beneficial use.

9. SAME—DEEDS—ESTOPPEL.

Evidence that within 10 years, in settlement of a dispute as to the boundary line between them, defendant and complainant had exchanged deeds each containing a reservation of a right of way, is very significant, if not controlling, and establishing that at that time each recognized in the other a right of way over the premises in question.

Appeal from Kent; Brown, J. Submitted June 23, 1916. (Docket No. 39.) Decided December 22, 1916.

Bill by the Berkey & Gay Furniture Company and others against the Valley City Milling Company to establish complainants' right to use a certain alley or way, and to restrain defendant from obstructing same. From a decree for complainants, defendant appeals. Affirmed.

*Butterfield & Keeney,* for complainants.
*Rodgers & Rodgers,* for defendant.

The bill of complaint in this case is filed by the complainants:

(*a*) To obtain a decree confirming their right to the use of a way, alley, or road over certain described premises as appurtenant to the premises of the complainants.

(*b*) For a mandatory injunction compelling defendant to remove certain obstructions placed in said alleged way, alley, or road.

(*c*) For an injunction restraining defendant from constructing any building in said alley, way, or highway, or from in any manner obstructing the same, or from impeding or embarrassing the complainants in their right to use the same as a highway.

The defendant answering denies the right of the complainants to an easement over the lands described and prays for the dismissal of the bill. The map, defendant's exhibit C, on page 236, will serve to give an outline of the situation.

The property of the Valley City Milling Company, the defendant, is located on lot C and the southerly portion of lot B between the Grand river on the west and the canal on the east. Complainants Berkey & Gay are located on the northerly part of lot C and lot A, immediately north and adjoining defendant's property. A second map showing the location of these several lots is herewith shown on page 238.

The location of the proposed structure sought to be enjoined is shown on defendant's Exhibit C and lies on the northeast corner of their property adjoining the canal. It is indicated on the map by the words, "proposed garage." The northwest corner of this garage if constructed would come within 13.65 feet of the southeast corner of the Berkey & Gay building and would obstruct more than one-half of the way which the complainants claim they have a right to use. Other complainants besides the Berkey & Gay Furniture Company own unplatted property, sold to them by metes and bounds north of lot A and claim to be entitled to the free and unobstructed use of said way.

The history of this way as gathered from numerous conveyances is somewhat vague and confusing. All the land lying north of Michigan avenue and between the canal and the river involved in this proceeding was

patented in 1833 to Lucius Lyon and E. P. Hastings. In 1836 N. O. Sargent and Lucius Lyon conveyed to one John P. Calder an undivided one-third part of lots A, B, and C, with the following reservation:

"And also the parties of the first part except and reserve to themselves, their heirs and assigns forever, the right of way over, through and across the above-mentioned lots, A, B, and C, that is to say, a space of 25 feet wide on the west bank of the canal, commencing at the north line of Bridge street, and running northerly along the bank of the canal across aforesaid lots A, B, and C, and being a continuation of a street designated on the map before referred to as Mill street, the same to be kept open and used in common by the said parties of the second part and also for convenience of the parties of the first part, and their heirs or assigns, servants and agents, in passing to and from said premises lying above said lots A, B, and C."

By the year 1854 the title to this one-third interest as well as to the other two-thirds had become merged and the entire title vested in Daniel Ball. It is apparent from an examination of the various deeds from Daniel Ball to his several grantees that he attempted to lay out a street on the west side of the canal across lots C, B, and A, because in 1863 he executed a deed to one Latimer containing the following description:

"All that part of lot C beginning at the northeast corner of lot D, thence north on the west bounds of Mill street, 65 feet, thence west at right angles to said street to tailrace, thence down said tailrace to north line of lot D, thence east to beginning, with water power, etc., for propelling machinery."

Other conveyances of lots C, B, and A indicate that the easterly limit was the westerly line of Mill street (so called), and it is apparent that it was the general understanding at that time that the way on the west side of the canal north of Bridge (now Michigan) street and crossing lots C, B, and A as well as other property north of those lots was a public street. It

is clear, however, that there never was any formal dedication of said way or street to the public. It appears to have been maintained in a condition suitable for use by the abutting owners and for a great many years, probably 40 or 50, no question was ever raised as to the right of all persons so desiring to use said way. Later and perhaps as far back as 1896 the defendant, the Valley City Milling Company, from time to time caused to be erected a sign, or signs, at the entrance to said way bearing the words "Private" or "Danger" or other words warning intending passengers over said way that they used it at their peril.

While it is admitted by defendant that its conveyance of lot C and the southerly part of lot B does not include said disputed strip, it is its contention that it has acquired title thereto through other conveyances, for instance, a deed dated February 26, 1877, and recorded March 4, 1878, containing the following description:

"The bed, banks, and basin of the canal on the east side of Grand river, including a strip of land, 6 feet in width on the east side of said canal, south of Bridge street, * * * and a strip of land 30 feet in width on west side of canal extending from Bridge street north to the north line of land assessed to Reuben Wheeler, excepting public street, alleys, highways, and thoroughfares."

Other deeds introduced in evidence are said by defendant to sustain its claim to the ownership of the fee in the disputed way. A decree having passed for complainants, defendant has appealed.

The case is argued under the following heads:

(1) No easement exists by grant because: (a) The reservation was over a one-third interest only; (b) the dominant and servient estates have been merged since the reservation; (c) since the merger there has been no dominant and servient estates.

(2) No easement exists by user.

(3) No easement ever existed on the location found in the decree.

(4) The proposed garage does not interfere with a right of way.

BROOKE, J. (*after stating the facts*). The first position taken by defendant in our opinion requires no examination. It may be conceded for the purposes of this case that the reservation contained in the deed of one-third of lots C, B, and A executed in 1836 was obliterated by the subsequent merging of all the estates in Daniel Ball. The language of this deed, however, is of evidential value not as showing that complainants have a record title to the easement, but as indicating beyond peradventure that the owners of the property as early as 1836 believed that the beneficial use of the land lying between the canal and the river could only be enjoyed by the several owners thereof, if a common way were kept open on the west bank of the canal.

We are of opinion that decision may well be rested upon a negation of the defendant's second position. The record shows without contradiction that from the earliest period within the memory of living witnesses and during all the intervening time down to the present complainants and all other persons desiring to use said way have done so, and this user we find to have been *as of right* and not by sufferance. No protest against such user has been voiced by defendant except by the erection of the sign, hereafter noticed, and the way has never been closed except upon occasions when repairs were necessary. The maintenance of a sign to the effect that the road was a private drive and must be used at the risk of the user is not conclusive. In the first place the way had been in use for more than a quarter of a century before any sign was erected, and in the second place the purpose of its erection would seem to be rather to avoid liability for possible

injury upon the way than to assert defendant's dominion over it.

Many cases are cited in defendant's brief to the proposition that a user having its inception in license or favor cannot ripen into a prescriptive right. This is undoubtedly the law, but the principle cannot be applied to the facts in this case. Complainants themselves or their grantors purchased lot C as abutting on the west side of the way then called Mill street in the deeds. The user of the way had certainly existed more than a quarter of a century before the execution of the deeds by which defendant claims to have secured the title to the fee. Under these circumstances it cannot be claimed that the user in its inception was through license or favor of the defendant or its grantors.

It has been held that the open, notorious, continuous, and adverse use across the land of another from a residence or place of business to a public road for more than 20 years affords a conclusive presumption of a written grant of such way (*Clement* v. *Bettle*, 65 N. J. Law, 675 [48 Atl. 567]), and that when the passway has been used for something like a half century, it is unnecessary to show by positive testimony that the use was claimed as a matter of right, but that after such user the burden is on the plaintiff to show that the use was only permissive (*Magruder* v. *Potter*, 77 S. W. 919, 25 Ky. Law Rep. 1336). See, also, *Chenault* v. *Gravitt*, 27 Ky. Law Rep. 403 (85 S. W. 184) ; *Wathen* v. *Howard*, 27 Ky. Law Rep. 7 (84 S. W. 303). We are of opinion that the defendant not only failed to show that the use of said way by the plaintiffs was permissive, but that the plaintiffs introduced testimony which convinces us that such use was enjoyed by the plaintiffs and their grantors as a matter of right.

It is next contended by defendant that no easement

ever existed on the location found in the decree. This claim is based upon the fact that the decree delimiting the way across defendant's land commences at a point 19.10 ft. west of the westerly line of the canal where it crosses Michigan street, and it is urged that if any right of way existed it was a right of way 30 feet wide immediately west of the canal. An examination of the defendant's Exhibit C will show that the defendant just north of Michigan street has erected a garage 17.6 feet wide extending westerly from the edge of the canal, and that its intake is open for an equal distance west of the west line of the canal. Again referring to said plat we find that the way over the Berkey & Gay property is approximately 30 feet wide, though north of that it has been narrowed by structures at one point to 23.25 feet, and at another to 17.4 feet. We are of opinion that the wrongful invasion of this way by others should not be held to prevent plaintiffs Berkey & Gay from insisting that the way be kept open from their premises south to Michigan street. If the obstructions north of the Berkey & Gay factory have not existed for a period sufficient to establish the right to their maintenance by prescription, defendant, if interested, would doubtless be entitled to its remedy.

The fact, if it be a fact, that the way during all the period has not been in the same place is not controlling. If the defendant by reason of the erection of its garage just north of Michigan street on the west side of the canal, and the construction of its intake there, for its own convenience, pushed the way further to the west, the new way would take the place of the former one. *Hall* v. *Hall*, 106 Me. 389 (76 Atl. 705); *Chenault* v. *Gravitt, supra.*

It is finally contended on behalf of defendant that the proposed garage does not interfere with the right of way. This is based upon the fact that between 13 and 14 feet between the northwest corner of the pro-

posed garage and the southeast corner of the Berkey & Gay factory would still remain available for the way. It is said that the widest wagon used by complainants or any of them is less than 7 feet in width, and that as the obstruction is only at one point, and teams would not be required to pass at that point, the space left is adequate. We are unable to agree with the contention of the defendant that the beneficial use of the said way would not be seriously interfered with by the erection of said proposed structure. The record shows that the property abutting upon said way for a considerable distance to the north is occupied by large manufacturing establishments, and that constant ingress and egress to the various places is necessary. It can hardly be contended that a way at one point 14 feet wide is as valuable as one approximately 30 feet wide. The fact that plaintiffs at a very considerable expense have undertaken to enjoin the structure for the purpose of maintaining their right to the broader way would seem to indicate that they, at any rate, believe that defendant's proposed garage would seriously interrupt their use of the way.

A very significant, if not controlling, fact in this controversy has not been heretofore referred to. It appears that as late as 1903 a controversy arose between plaintiffs Berkey & Gay and the defendant as to the exact line separating their properties. In that year mutual deeds were executed by the parties, and the one executed by the plaintiffs Berkey & Gay contained the following reservation:

"Reserving the rights of the first party in a 30-foot alley on the east side of said mill lots (the mill lots in question being lots B and C)."

On the same day and as part of the same transaction the defendant conveyed to the Berkey & Gay Furniture Company certain land, reserving a right to the first party to a 30-foot alley on the east side of the

said lots. It is therefore apparent that within 10 years of the filing of the bill of complaint in this case defendant and plaintiffs Berkey & Gay had by solemn deed recognized in each other a right of way over lots B, C, and A, 30 feet in width.

The decree of the court below will stand affirmed, with costs.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and PERSON, JJ., concurred.