MYER v. FRANKLIN HOTEL COMPANY, INC.

1. INJUNCTION—CONTINUING TRESPASS—DELAY.
   One who delays attempting to secure equitable relief of injunction against a claimed continuing trespass until the dominant user or tenure had grown to a valuable prescriptive estate would not be granted an injunction against the continuance of the trespass.

2. SAME—CONTINUING TRESPASS—STATUTE OF LIMITATIONS.
   Owner of land who failed to seek injunction against overhanging fire escapes on defendants' hotel property until long after statute of limitations had run against him was not entitled to injunction against the continuing trespass (CL 1948, § 609.1).

3. SAME—ALTERATION OF OVERHANGING FIRE ESCAPE—LACHES.
   Owner of land over which defendant hotel's fire escape overhung was guilty of laches precluding granting of injunctive relief, where he was present at time fire escape was reconstructed and extended 4 feet from wall instead of 3 feet as formerly and extended over space parallel with the wall but raised no complaint until some 11 years following the alteration.

4. EASEMENTS—OVERHANGING FIRE ESCAPE—PRESCRIPTIVE USE.
   Defendant hotel company whose fire escape overhung plaintiff's land held, to have pleaded and proven a fully-ripened prescriptive right to maintain the present escape structure.

Appeal from Saginaw; Quinn (Timothy C.), J., presiding. Submitted October 10, 1958. (Docket No. 41, Calendar No. 46,432.) Decided December 3, 1958.

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 28 Am Jur, Injunctions § 67; 19 Am Jur, Equity § 494.

Bill by Alfred F. Myer against Franklin Hotel Company, Inc., and Saginaw Hotel Corporation, both Michigan Corporations, for declaration of rights, quieting title and mandatory injunctive relief as to overhanging fire escape. Cross bill by defendant Franklin Hotel Company, Inc., praying for determination of valid easement and prescriptive right to maintain same. Decree for defendants. Plaintiff appeals. Affirmed.

*Alfred F. Myer, in propria persona,* and *Willard J. Nash,* for plaintiff.

*Crane, Crane, Kessel & Deibel,* for defendant Franklin Hotel Company, Inc.

BLACK, J. Plaintiff owns certain business property in Saginaw, a portion of which is adjacent to the rear wall of what is known in the record as the Franklin Hotel. The Franklin Hotel is 6 stories high. The structure, formerly known as the McCormick Building, was rebuilt in 1916* by adding 2 or 3 stories (the witnesses are uncertain as to the exact number added) to make up the present 6. At that time, and as far back as 1908 according to the memory of 1 witness, a steel ladder fastened to the rear wall formed the means of emergency exit from the upper floors. During such rebuilding the ladder was replaced by a more elaborate escape structure, consisting of railed steel balconies at each floor, measuring 3 by 5 feet horizontally, through which a new steel ladder projected vertically.

It appears without dispute that the rear wall of the McCormick Building—now Franklin Hotel—was built to or within a few inches of the lot line separating Mr. Myer's premises from those of defend-

---

* The year of such rebuilding, according to plaintiff's testimony, was 1916. Other testimony gave the year as 1919.

ants (Franklin Hotel Company and Saginaw Hotel Corporation). It appears also that a conventional steel fire escape, consisting of railed platforms and stairways built one above the other, has now replaced that which was provided in 1916. The replacement job was done in 1941, on demand of the municipal fire department. All such construction and reconstruction was done by and at expense of defendants and their predecessors. Mr. Myer and those who preceded him as owners of the adjacent premises were not consulted with regard thereto at any time. However, Mr. Myer was on hand and knew about the work done in 1941.

The present fire escape, constructed, as noted, in 1941, differs from the 1916 structure in that it projects—outward from the building—4 feet instead of 3 feet. It also takes up more space, parallel to the wall of the building, than the previous structure.

Plaintiff's bill, in form a petition for declaration of rights, calls for a mandatory injunction requiring defendants "to remove said fire escapes projecting over and beyond said property;" for an adjudication of damages occasioned, as plaintiff alleges, by defendants' unlawful use of the surface of the ground immediately beneath same, and for a decree quieting title in his favor as against the defendants. Defendants' answer and cross bill prays for a decree adjudging that they have "a valid easement and prescriptive right to maintain the fire escape."

The case came to due hearing on pleadings and proofs, followed by an opinion of the chancellor holding generally in favor of defendants. Decree for defendants having entered, plaintiff appeals.

The decisive question brought here is stated and counterstated by the parties as follows:

By the plaintiff:

"Did plaintiff's undisputed testimony of permission granted, together with the original Franklin Hotel Company offering to buy the space occupied by the fire escape, and the record barren of any adverse action, claim or deed by defendant or its predecessor thereafter show that permission was originally granted in 1916 to erect the first fire escape on the defendant's 7 story* hotel building?"

By the defendants:

"Does the defendant have a prescriptive appurtenant easement to maintain a fire escape on the rear of its hotel building with ingress and egress over and above the land of the plaintiff?"

Plaintiff's briefs are built upon and around contention that construction and maintenance of the successive and projecting fire escapes was, through the years, permissive and not prescriptive, and that defendants have acquired no rights on account of such construction and maintenance. The chancellor, however, was persuaded otherwise. We agree with his conclusion.

The stated and counterstated question is illuminated, to some extent but not decisively, by correspondence—in 1926— plaintiff produced at the hearing below. Plaintiff's father at the time was owner of the burdened estate. Plaintiff then spoke for and represented his father. Writing to the then owner of the hotel (Benjamin Franklin Hotel Co.) plaintiff declared (the letter bears date of March 18, 1926):

"If I remember correctly, some years ago the then management of your hotel obtained permission from Frank J. Myer, my father, of this city to erect certain iron ladders and fire escapes on the rear of your hotel property, which iron ladders and fire escapes project over on the property owned by my

---

* This is an error. The testimony shows that the hotel is 6 stories high.

father known as number 110 South Washington avenue which properties adjoin each other, abutting on the rear.

"I have inclosed herewith a short agreement in writing setting forth the facts of the situation, and my father requests you to sign by your proper officers, if you will, so that there will be no question in the future in case additions were built upon his property.

"I trust that the agreement is satisfactory to you and, if you have any objections to the form of it or otherwise, I will be glad to take the question up with you."

The addressee promptly acknowledged plaintiff's letter saying:

"Your letter of March 18th addressed to the Benjamin Franklin Hotel Company has been referred to the writer as secretary of that company.

"In reading over the instrument it has occurred to the writer that it might be possible that you could sell without hurting your frontage, or damaging any buildings thereon, such portion of your lot, probably 4', or 6 or 8' in width, abutting the rear of the Franklin Hotel property as would permit the erection of a building upon your lot and still permit light and air to enter the rear windows.

"The writer would be very glad to hear from you on this suggestion."

Plaintiff thereupon wrote back that "my father does not desire to dispose of any portion of his property." The letter concludes:

"I might add that I did not wish to convey the impression that there would be any building upon my father's property at the present time, and have no immediate prospects of building in the future. If, at any time in the future, building operations should be started, possibly this matter can be taken up.

"I trust that the instrument submitted to you was satisfactory in form and that I may receive the same at your earliest convenience."

Some 2 weeks later the secretary of the Benjamin Franklin Hotel Company wrote plaintiff stating that the proposed instrument would shortly be submitted to the company's board of directors. The letter concludes "We presume that authorization for the signing of the instrument will be given to the officers at that time." At this point, and so far as the record discloses, a hiatus of sorts developed. Negotiations appear as having been dropped. At least there is no proof that they were even attemptedly resumed until many more years had expired.

The effect of this correspondence of 1926 is clouded by the fact that no party, at the trial, produced a copy of the unsigned instrument each was considering.* It may have consisted of an agreed declaration of past permissive use and a commitment to continuity thereof at will of plaintiff's father. Or it may have recited a good-faith dispute between the parties and a declared means of resolution thereof. Guessing further, it may have been an agreement that "no prejudice" would result from a continuation of that which formed the basis of plaintiff's complaint.

The correspondence of 1926 proves at best no more than fruitless negotiation toward settlement of a controversy which after the lapse of 32 years, has been brought here. And its evidentiary significance pales before the fact that plaintiff's father, plaintiff's brothers (they succeeded the father in relevant interest), and plaintiff (he succeeded the brothers)

---

* Whether plaintiff or defendants—either or both—were able to produce such copy is left by the record in a state of confused uncertainty. Plaintiff says he sent all copies with the letter of March 18th. Defendants contend the correspondence was with a former owner of the hotel and that they could not, within reason, be expected to produce.

himself, did nothing thereafter toward legal protection of their asserted rights until lapse of more than a quarter century. This brings us to developments in the next decade—of the nineteen-thirties.

In 1937 (this time as declared representative of his brother owners of the servient estate) plaintiff wrote Bell Hotel Management Corporation, of Chicago, reciting his understanding that Bell was operating the Franklin Hotel "under a leasehold agreement." In the letter plaintiff detailed a number of complaints including the following: · ·

"The hotel also has maintained fire escapes upon the rear of the wall of the hotel which project over upon my clients' property a distance of 4 to 5 feet and have an iron stairway leading from the last step of the fire escape, and which iron stairway rests upon the roof building of this theater building. *All these things have been done without the consent or permission of my clients.*"

Again, and in 1946, plaintiff wrote the then president of defendant Franklin Hotel Company "about removing the fire escapes which project over upon my building." The letter proposes anew "some plan that would be mutually agreeable to possibly let them [the fire escapes] remain under some sort of an agreement if that could be arrived at." It concludes with a threat of suit for "double damages under the statute for the unlawful detainer and trespass* which has been maintained by the projection of these fire escapes." But the threatened suit was not instituted and no appeal to the courts was made until plaintiff filed this bill in 1952.

We must assume that plaintiff, a practicing attorney, knew, when writing in 1937, that he was contradicting his previous assertion that the escape

---

* If maintenance of the escape structure amounted to a "trespass," the use hardly could be called "permissive."

structure was set up and maintained by permission. And imputable to him, certainly with as much force as the law exacts of a layman in like circumstances, is knowledge of the rule that equity has no time for the owner of a servient estate who delays his application for relief until the dominant user or tenure —enjoinable originally—has grown to the stature of a valuable prescriptive estate. Here the plaintiff must be charged with knowledge that a statute of limitations* was running against the unilateral assertions made by him in 1926 and that a statute-arresting suit was in order when the negotiations— initiated by him and not by the defendants or their predecessors—were dropped or failed. He did not move until too many years went by. This is enough to justify the chancellor's decree.

A final point is made. It is said that, even though owners of the Franklin Hotel did acquire—prior to 1941—the right to maintain the pre-1941 fire escape as described, the new installation of 1941 occupied and now occupies about twice (mostly along the wall rather than outward from the wall) as much area of overhang as did the replaced structure. From this plaintiff reasons that defendant Franklin Hotel Company, having installed a new and increased burden of dominance over the servient estate, is short of years—counting them from 1941 to 1952—on which to build a prescriptive right of continued maintenance of the 1941 structure.

The idea is stale if novel. Plaintiff was present as the reconstruction job of 1941 proceeded and, if justiciably aggrieved at the time by the increased burden of the new structure, doubtless would have made his complaint known in order (if practicable and legally possible at the time) that the new structure take up no more area of overhang than the old,

---

* See CL 1948, § 609.1 (Stat Ann § 27.593).—REPORTER.

or, failing that, that he obtain what might have been rightful injunctive relief at the time. Instead he made no complaint of increased burden, sought no injunctive relief, and (as we glean from the record) did not raise the issue of added dominance until after defendants' witness Koehler (the contractor employed by defendant Franklin to construct, in 1941, . the new fire escape) had testified to the comparative platform areas of the 1916 and 1941 installations.

On this phase of the case we agree with defendants that plaintiff should be held estopped from asserting that defendants, by action in 1941, increased the dominant burden to such extent as to require a new start of statutory travel. Plaintiff does not suggest that we should, by decree, order that the present structure be sheared vertically to pre-1941 measurements (which is well). What he desires is a holding that the 1941 change, unchallenged though it was at the time,* amounted to a loss of the old plus right under his bill to complete abatement of the new. We are not so disposed, and hold that plaintiff's appeal to the doctrine of increased servitude comes too late. What might have been done, had plaintiff seasonably raised the point of expanded burden, cannot be considered now. The doctrine of unexcused laches stands in the way.

We have reviewed the sharply disputed question whether plaintiff bore the burden of proving his allegation of permissive use, or whether defendants bore the burden of proving their counterallegation of prescriptive acquisition (See, to this issue, *Berkey & Gay Furniture Co.* v. *Valley City Milling Co.,* 194 Mich 234). The point need not be settled in view of our finding, on the whole record, that defendants.

---

* See *Moon* v. *Mills,* 119 Mich 298, where plaintiffs failed to object to a change (by the defendant prescriptive claimant) of stairways leading from an alley to the second story of defendant's building.

have proven a fully-ripened prescriptive right to maintain the present escape structure.

Other questions considered in the briefs require no discussion. Decree affirmed. Costs to defendants.

DETHMERS, C. J., and CARR, KELLY, SMITH, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.