*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RALPH STEVEN SMITH and SUE SMITH,

        Plaintiffs/Counterdefendants-
        Appellants,

v

JOSEPH W. STRAUGHN, Individually and as
Trustee of JOSEPH W. STRAUGHN
REVOCABLE TRUST,

        Defendant/Counterplaintiff/Third-
        Party Plaintiff-Appellee,

and

TIMOTHY SMITH,

        Third-Party Defendant.

FOR PUBLICATION
January 28, 2020
9:00 a.m.

No. 345391
Cass Circuit Court
LC No. 17-000092-CH

Before: O'BRIEN, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

RONAYNE KRAUSE, J.

Plaintiffs, Ralph Steven Smith and Sue Smith, appeal as of right the trial court's order and declaratory ruling regarding an easement that burdens the property of defendant, Joseph Straughn, individually and as Trustee of Joseph W. Straughn Revocable Trust. In relevant part, the trial court permitted defendant to maintain a fence and gate across the easement at defendant's property line, forbade either party from placing anything on the easement, and required both parties to maintain the portion of the easement, including trimming trees, on their respective properties. Only the matter of the gate is being appealed. We affirm.

## I. BACKGROUND

In 1978, plaintiffs and their family members formed a partnership to purchase property located off US-12 East in Niles, Michigan. In 1986, the partnership divided the property into five parcels, Parcels A, B, C, D, and E. Parcel E was the southernmost property located directly

-1-

on US-12, and the other parcels were landlocked and located farther north of each subsequent parcel, with Parcel A being the northernmost property. The partnership created an easement across the easternmost 66 feet of Parcels E, D, and C, and the southern 87.91 feet of Parcel B.[1] Plaintiffs lived on Parcel E and shared the use of the easement and Parcels A and B with their family. Plaintiffs and their family created a 14-foot gravel roadbed extending north and south along the easement.

In November 2005, defendant purchased Parcel C, the parcel in the center of the properties, subject to the easement across the eastern 66 feet of Parcel C. In late July 2008, defendant experienced a break-in and theft at his house, and he requested plaintiffs' consent to install a gate along the southern property line of Parcel C across the easement for security purposes. According to plaintiffs, they did not consent to defendant's proposed gate, but according to defendant, plaintiffs did not object to his proposal. Over the next year, defendant constructed a 7-foot tall and 400-foot wide wooden fence across the southern border of his property, including across the easement. The gate had two doors that rolled open sideways in opposite directions. The gate opening was 19½ feet wide when fully open and opened beyond the 14-foot wide roadbed.

Beginning in 2016, plaintiffs raised concerns regarding defendant's use of the easement. Defendant parked vehicles and equipment on the easement, placed cement blocks and stones on the roadbed, damaged and scraped the roadbed, placed snow plies across the easement, placed caution tape and fiberglass rods along the west portion of the easement extending north along defendant's property, and installed cameras facing his gate. Plaintiffs and defendant testified that these interferences with the easement did not totally prevent plaintiffs from using the easement, except for one instance when snow piles covered the easement. According to plaintiffs, defendant left the gate closed, which required them to exit their vehicles to use the easement, and the gate was physically challenging for plaintiffs to open. However, defendant often observed plaintiffs and their son open the gate and did not observe plaintiffs have any difficulties opening the gate. Additionally, the gate was always unlocked, and defendant told plaintiffs that if he ever did lock it, he would arrange for plaintiffs to have a key. According to plaintiffs' son, defendant also offered to install an electric motor on the fence, but plaintiffs declined.[2]

Plaintiffs alleged that defendant's fence, gate, vehicles, and other items on the easement impeded the easement and prevented them from accessing Parcels A and B without obstruction or interference. Plaintiffs requested declaratory and injunctive relief declaring their right to full and unimpeded access and use of the easement and preventing defendant from obstructing or interfering with that right. Defendant filed a counterclaim and requested declaratory relief to

---

[1] Parcel A, the northernmost parcel, wrapped partially around Parcel B. Consequently, Parcel A could be accessed without needing to extend the easement across the entirety of Parcel B.

[2] At trial, plaintiffs testified that they would consider it unacceptable to mechanize the gate, to add counterweights to make the gate easier to open, or even to remove the gate entirely and leave intact any portion of the fence on the easement.

determine the parties' rights and obligations regarding the easement and to declare that his use of the easement, including his fence and gate, was consistent the easement and did not unreasonably burden plaintiffs' use of the easement. The trial court conducted a site visit, with the attorneys present, and personally determined that it "could easily move the gate" itself.

The trial court interpreted the language of the easement and concluded that its purpose was for ingress and egress and to access US-12. The trial court determined that the easement did not provide any restrictions or specify plaintiffs' intent or plan to use the easement and to develop Parcels A and B. The trial court determined that defendant's gate permitted plaintiffs to use the gate for ingress and egress and did not unreasonably interfere with their use of the easement. The trial court also determined that it was not unreasonable to have the gate closed, if it did not deprive plaintiffs of the ability to use the easement, and that it was reasonable for the parties to jointly maintain the easement. The trial court prohibited both parties from placing vehicles or items on the easement.

## II. STANDARD OF REVIEW AND PRINCIPLES OF LAW

This Court reviews de novo a trial court's ruling in a declaratory action. *Toll Northville Ltd v Northville*, 480 Mich 6, 10; 743 NW2d 902 (2008). This Court also reviews de novo the proper interpretation of legal instruments, such as deeds or contracts. See *In re Rudell Estate*, 286 Mich App 391, 402-403; 780 NW2d 884 (2009). This Court reviews equitable matters de novo, but gives deference to the trial court's determinations. *Cantieny v Friebe*, 341 Mich 143, 146; 67 NW2d 102 (1954). Thus, this Court reviews for clear error the trial court's factual determination of a party's rights under an easement. *Blackhawk Dev Corp v Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005). "A factual finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003). This Court is especially deferential to the trial court's superior ability "to judge of the relative credibility of witnesses." *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881).

An easement is a limited property interest; it is the right to use the land burdened by the easement for a specific purpose. *Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 378-379; 699 NW2d 272 (2005). The land burdened by the easement is the servient estate, and the land benefited by the easement is the dominant estate. See *D'Andrea v AT&T Mich*, 289 Mich App 70, 73 n 2; 795 NW2d 620 (2010). The easement holder's use of the easement is limited to the purposes for which the easement was granted and must impose "as little burden as possible to the fee owner of the land," but the easement holder nevertheless enjoys "all such rights as are incident or necessary to the reasonable and proper enjoyment of the easement." *Blackhawk*, 473 Mich at 41-42 (quotation marks and citations omitted); see also *Cantieny*, 341 Mich at 147; *Harvey v Crane*, 85 Mich 316, 325; 48 NW 582 (1891); *Kirby v Meyering Land Co*, 260 Mich 156, 169; 244 NW 433 (1932). The necessity of an easement holder's conduct can be informed by the purpose and scope of the easement, in addition to the easement holder's accustomed use of the easement. See *Harvey*, 85 Mich at 318-319, 325.

A fee owner may use his or her land on a servient estate for any purpose not unreasonably inconsistent with the rights of the easement holder. *Cantieny*, 341 Mich at 146-147; *Harvey*, 85 Mich at 322; *Kirby*, 260 Mich at 168-170. "What may be considered a proper

and reasonable use by the owner of the fee, as distinguished from an unreasonable and improper use, as well as what may be necessary to [the easement holder's] use and enjoyment, are questions of fact to be determined by the trial court or jury." *Harvey*, 85 Mich at 322-323. "Where the language of a legal instrument is plain and unambiguous, it is to be enforced as written and no further inquiry is permitted." *Little v Kin*, 468 Mich 699, 700; 664 NW2d 749 (2003); see also *Blackhawk*, 473 Mich at 42. The scope of an easement may only be determined by reference to extrinsic evidence if the text of the instrument is ambiguous. *Id*.

## III. ANALYSIS

Plaintiffs first argue that the trial court erroneously concluded that defendant had a right to install a fence and gate across the parties' shared easement because the easement did not reserve such a right. Plaintiffs also argue that the trial court erroneously failed to consider plaintiffs' intent and understanding of the easement at the time they created the easement. We disagree with both arguments.

## A. FACIAL PROHIBITION OF A FENCE

As discussed, the fee owner's use of land on a servient estate is reviewed for reasonableness and whether that use is unreasonably inconsistent with the easement holder's rights. We cannot find clear error in the conclusion that security and deterrence against break-ins, trespassers, and theft are reasonable concerns that are reasonably addressed by the fence and gate. Even more significantly, we take particular note that the trial court personally verified how easy the gate was to open. We defer strongly to trial courts' superior ability to evaluate credibility of witnesses. See *McGonegal*, 46 Mich at 67. We conclude that the same deference must apply where the trial court was uniquely able to directly test a critical piece of evidence, as well as view that evidence in its proper context. We must also defer to the trial court's implicit credibility assessment, especially in light of its site visit, that plaintiffs were able to move the gate, contrary to their claims that they could not move the gate. We are unable to find any clear error in the trial court's factual finding that the gate did not practically interfere with plaintiffs' use of the easement, even when left closed and even though plaintiffs had to exit their vehicles to open the gate. Therefore, we conclude that defendant's fence and gate were not inconsistent with plaintiffs' use of the easement.[3] See *Harvey*, 85 Mich at 325; see also *Kirby*, 260 Mich at 168-170.

Additionally, defendant's gate does not obstruct or effectively reduce the size of the easement from 66 feet to the 19½-foot gate opening. The gate imposes a 19½-foot bottleneck at one point on the easement. Defendant's actions on his property did not narrow or restrict the 66-foot easement at any other point along the easement. Significantly, the actual *roadbed* is only approximately 14 feet wide, narrower than the gate opening. There was no evidence in the lower

---

[3] Any other obstructions placed on the easement by defendant do not pertain to the gate or fence. Furthermore, the trial court ordered that defendant was prohibited from placing any such obstructions on the easement, and defendant has not appealed that portion of the trial court's order.

court record to suggest that the 19½-foot gate opening was insufficient for any of plaintiffs' uses of the easement or for plaintiffs to access Parcels A and B.[4] Therefore, we conclude that defendant's gate and fence did not obstruct and was not inconsistent with plaintiffs' use of the easement. Cf. *Berkey & Gay Furniture Co v Valley City Milling Co*, 194 Mich 234, 243-244; 160 NW 648 (1916) (concluding that under the circumstances, the full width of the easement was actually necessary for its use). Further, the trial court's order was supported by the evidence and was warranted by the circumstances. See MCR 2.601(A); *Three Lakes Ass'n v Kessler*, 91 Mich App 371, 377-378; 285 NW2d 300 (1979) (explaining that a trial court may fashion an equitable remedy that is warranted by the circumstances).

Plaintiffs argue that gates are *per se* impermissible under *Cantieny*, but in fact, *Cantieny* involved gates that were *locked*. *Cantieny*, 341 Mich at 145. We find it critically distinguishable that the gate here was unlocked and easily opened; furthermore, defendant offered to mechanize the gate. Our Supreme Court held, in relevant part, that

> it is settled law that gates will not be permitted except where the right has been reserved, and where the owner of the servient estate, acting in good faith, is able to show that the gates are reasonably necessary to provide some substantial and legitimate benefit to himself; *or, to put it another way*, that equity will not authorize such structures when they are inspired by ill will, for the purpose of injuring or annoying others, without being of any real benefit to the owner. [*Id*. at 147-148 (quoting the trial court) (emphasis added).]

Our Supreme Court emphasized that it was sitting in chancery. *Id*. at 146. In that context, we think the above quotation sets forth a reasonableness-under-the-circumstances test, not a mechanical prohibition no matter the surrounding facts.

Plaintiffs also rely heavily on this Court's opinion in *Bryant v Albertie*, unpublished per curiam opinion of the Court of Appeals, issued August 11, 2005 (Docket No. 253207).[5] The gate at issue in *Bryant* was, again, *locked* and erected after a history of the defendants intentionally blocking the plaintiffs from using the easement at all.[6] *Bryant*, unpub op at pp 1-2. In any event, *Bryant* quoted with approval:

> In the absence of an express reservation of a right to maintain gates, it is the general rule that whether the servient owner may erect and maintain gates, bars, or fences across or along the easement of way depends on the intention of the

---

[4] Apparently, the inconvenience of the gate was seriously exacerbated by the presence of untrimmed tree branches, which we presume will be resolved by the unappealed portion of the trial court's order.

[5] Unpublished cases are not precedential under the doctrine of stare decisis, MCR 7.215(C)(1), nor are they binding under the "first-out rule," MCR 7.215(J)(1).

[6] Plaintiffs also cite to *Todd v Nobach*, 368 Mich 544, 550; 118 NW2d 402 (1962), which again involved a history of completely blocking use of the easement. *Id*. at 549.

> parties connected with the original creation of the easement, as shown by the circumstances of the case, the nature and situation of the property subject to the easement, *and* the manner in which the way has been used and occupied. [*Bryant*, unpub op at p 3, quoting 25 Am Jur 2d, Easements & Licenses, § 88, p 587 (emphasis added).]

The word "and" must generally be read as conjunctive. See *Coalition Protecting Auto No-Fault v Mich Catastrophic Claims Ass'n. (On Remand)*, 317 Mich App 1, 14; 894 NW2d 758 (2016); *People v Comella*, 296 Mich App 643, 649; 823 NW2d 138 (2012) *Bryant* also noted that all of the circumstances should be considered when sitting in equity. *Bryant*, unpub op at p 5. Thus, *Bryant* again supports our conclusion that servient estate holders are not necessarily *per se* precluded from erecting a gate across an easement. Rather, the case law indicates that a gate may be permissible where, as here, it was not erected for the purpose of interfering with the easement holder's use of the easement, it was not locked, and the trial court did not clearly err in finding as a factual matter that the gate did not actually interfere with the use of the easement. Defendant's offer to mechanize the gate also weighs equitably in his favor.

In sum, defendant's fence and gate were not inconsistent with plaintiffs' limited right to use the easement for ingress and egress. The fence and gate did not prevent plaintiffs from using the easement, and the temporary interferences with the easement, including the snow piles and stones, did not prevent plaintiffs from using the easement and were cleared from the easement at the time of the bench trial. Additionally, the 19½-foot gate opening did not prevent plaintiffs from using the easement. Therefore, defendant's use of his property and his gate and fence were not inconsistent with plaintiffs' use of the easement, and the trial court's order and equitable remedies were warranted by the circumstances. See *Cantieny*, 341 Mich at 147; *Harvey*, 85 Mich at 322, 325; *Three Lakes*, 91 Mich App at 377-378.

On its face, the easement here provided that Parcels C, D, and E were "subject to an easement to be used in common with others over the East 66.00 feet thereof." Parcel B was "subject to an easement to be used in common with others over the South 87.91 feet of the East 66.00 feet thereof." The easement provided that the owners of Parcels B, C, D, and E could use the easement in common. The easement provided a means of ingress and egress from Parcels A, B, C, and D to a public roadway, US-12, because those parcels were landlocked. Therefore, plaintiffs unambiguously had a limited right to use the easement for ingress and egress to Parcels A and B and to US-12. See *Cantieny*, 341 Mich at 147; *Harvey*, 85 Mich at 322, 325.

The easement is silent as to the installation of fences, neither prohibiting them nor reserving the right to install them. As discussed, a locked gate or a gate motivated by the goal of excluding the easement holder would therefore be prohibited. However, the fact that the easement did not reserve a right to install a gate is not dispositive under the circumstances, where the trial court found the gate properly motivated and not an impediment to the use of the easement. "The owner of the fee subject to an easement may rightfully use the land for any purpose not inconsistent with the rights of the owner of the easement." *Harvey*, 85 Mich at 322. Case law establishes that installation of a locked gate, or any other erection of an impediment to accessing an easement, requires a reservation of a right to do so in the easement itself. However, the case law also establishes that the fee owner of the land may do essentially whatever the owner wishes, so long as the easement is not unreasonably impeded in the process. See *Kirby*,

260 Mich at 168-170. Therefore, because the plain language of the easement unambiguously does not forbid a non-obstructive gate, the trial court properly enforced the easement as it was written and fashioned equitable relief as warranted by the circumstances of this case. See *Little*, 468 Mich at 700; *Three Lakes*, 91 Mich App at 377-378.

## B. INTENT AND UNDERSTANDING OF DRAFTERS

Plaintiffs argue that the trial court gave inadequate consideration to the understanding of the original parties to the easement at the time the easement was granted. As noted, the courts generally are not permitted to consider such extrinsic evidence if the plain language of the instrument granting the easement is unambiguous. Nevertheless, even if we were to presume that silence regarding gates constitutes an ambiguity, plaintiff's testimonies that they intended to develop Parcels A and B and to construct a two-lane, and possibly public roadway, on the easement did not support the conclusion that defendant's gate and fence were impermissible.

Plaintiffs have not developed Parcels A and B, nor have they initiated the process to establish a private or public roadway after they acquired the properties in 1986. Allegedly, a document from the original partnership existed and indicated that the easement was meant to be used as a roadway, but this document was not provided to the court at the bench trial. For decades, users of the easement and owners of the servient parcels have been accustomed to using the easement in a manner perfectly consistent with a 14-foot wide roadbed. See *Harvey*, 85 Mich at 325. Thus, it is conceivable that developing the roadbed into a two-lane public highway might be deemed to overburden the easement.[7] See *Morse v Colitti*, 317 Mich App 526, 544-547; 896 NW2d 15 (2016). There was no other evidence of the grantors' intent to prohibit or permit a gate or fence at the time the easement was created. Furthermore, it is not clear from the record that a 14-foot, or possibly a 19½ foot, roadway would necessarily be incompatible with further developing Parcels A and B.[8] Unlike the situation in *Berkey & Gay Furniture Co*, 194 Mich at 243-244, any interference with the use of the easement posed by the gate and fence is at the most hypothetical; there is no evidence here that plaintiffs actually do or will actually need a wider roadway.

There was insufficient evidence in the lower court record to demonstrate that the grantors of the easement intended to prohibit a gate or fence across the easement or otherwise limit defendant's use of his property as the fee owner. The trial court did not clearly err in finding that

---

[7] We expressly make no determination of this issue, nor do we hold any opinion regarding this issue, and none should be implied. We note only that such an outcome is not strictly impossible.

[8] Plaintiffs cite to trial testimony from parties to the original easement that they had a general belief at the time that 66 feet was the legally mandated width for a road. However, plaintiffs' cited testimony does not state that the roadbed as actually installed was inadequate for the uses to which it was actually put. Rather, the testimony, like the easement itself, is silent as to gates or fences. Plaintiffs' testimonies did, however, reflect that they were able to drive their motor home and other vehicles through the gate opening and were impeded mostly by the alleged difficulty opening the gate and by untrimmed tree branches.

the gate and fence were properly motivated and did not unreasonably impede plaintiffs' actual use of the easement. Therefore, the trial court properly considered the plain language of the easement and concluded that defendant's gate and fence were not prohibited by the easement, were not contrary to the parties' intent when plaintiffs and their family created the easement, and were not inconsistent with plaintiffs' use of the easement.

Affirmed. Defendant, being the prevailing party, may tax costs. MCR 7.219(A).

/s/ Amy Ronayne Krause
/s/ Colleen A. O'Brien
/s/ Michael F. Gadola