KIRBY v. MEYERING LAND CO.

1. EASEMENTS—INJUNCTION—BREACH OF COVENANT—CONSTRUCTION OF DEED.

Right of lot purchaser to enjoin erection of clubhouse on certain lake front lots, reserved by owers for benefit of all lot purchasers, as infringement of easement, rests wholly on terms of deed, and not on early promises or expressions of intention not incorporated in deed.

2. SAME—EASEMENT GRANTED MAY NOT BE CONSTRUED AS DIFFERENT EASEMENT.

Deed must be construed as it reads, and easement granted by it may not be construed to create another or different easement for benefit of grantees.

3. SAME—RIGHT OF WAY.

Grant in deed to lot purchaser of "perpetual use * * * in passing to and from" lake and river, in common with all other lot owners, is grant of way or right of passage over said tract, and does not include other use.

4. SAME—INJUNCTION.

Lot purchaser granted right of way or passage over certain lots reserved for benefit of all lot purchasers is not entitled to enjoin erection of clubhouse on said lots, where his right of way to lake for full width of his lot is not obstructed thereby, and clubhouse is for benefit of all lot owners.

POTTER, J., dissenting.

Appeal from Oakland; Gillespie (Glenn C.), J. Submitted April 20, 1932. (Docket No. 172, Calendar No. 36,025.) Decided October 3, 1932.

Bill by William E. Kirby and another against Meyering Land Company, a Michigan corporation, and others to enjoin trespass on real estate. Bill dismissed. Plaintiffs appeal. Affirmed.

*George B. Hartrick,* for plaintiffs.

*Andrew L. Moore,* for defendants.

POTTER, J. (*dissenting*).    September 20, 1929, plaintiffs filed their bill of complaint against defendants to restrain trespass, remove permanent and temporary buildings alleged to constitute a trespass, and for other relief.    From a decree for defendants, plaintiffs appeal.    July 23, 1923, plaintiffs applied to purchase Lot No. 44 of Beachland subdivision in the township of West Bloomfield, Oakland county, Michigan.

March 20, 1924, plaintiff William E. Kirby bought of Fred S. Welch, trustee, on land contract:

"Lot 44 of Beachland subdivision, according to the plat thereof as recorded in register of deeds' office for Oakland county, Michigan:   Also the perpetual use of lots 13, 31, 32, 33, 34, and 106 of said Beachland subdivision in common with the owners and occupants of all the other lots in said subdivision in passing to and from Cass lake, Sylvan lake and Clinton river; also lots 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 39 and 40, also No. 38 subjected to the restrictions in a deed recorded in liber 355, page 65.   For the sum of $1,800."

November 26, 1928, the Meyering Land Company of Detroit, a corporation, deeded to plaintiff William E. Kirby and Ethel M. Kirby, his wife, the following:

"Lot number 44 of Beachland subdivision, according to a plat thereof as recorded in register of deed's office for Oakland county, Michigan, in liber 22 of plats on page 3; also the perpetual use of lots 13, 31, 32, 33, 34, 106, 24, 25, 26, 27, 28, 29, 30, 35, 36, 37, 38, 39 and 40, in common with the owners and occupants

of all the other lots in said subdivision in passing to and from Cass lake, Sylvan lake and Clinton river.

. "Subject, however, to the following building and other restrictions and which attach to and run with the land:

"(1)    Upon all lots of said Beachland subdivision running to Cass lake, Sylvan lake and Clinton river, except lots 38, 39 and 40, no part of any building, located thereon shall be within 40 feet of the water's edge and upon all other lots no part of any building shall be within 25 feet of the street line in front of said lot.

"(2)    All buildings erected or located on lots 41–52, inclusive, shall face upon Cass lake drive.

"(3)    All buildings erected and located on lots 53–93, both inclusive, shall face upon Beachland boulevard.

"(4)    All buildings erected or located on lots 94–99, both inclusive, shall face upon Sylvan avenue.

"(5)    All buildings erected or located on lots 1–40, inclusive, shall face upon Cass lake or Clinton river as the case may be.

"(6)    All buildings erected or located on lots 100–121, inclusive, shall face upon Sylvan lake.

"(7)    No fence shall be constructed on any lot unless the same comply fully with each and all of the specifications:

"(a)    It shall not be more than 36 inches in height above the ground;

"(b)    It shall be composed of either wooden lattice work or structural ornamental metal;

"(c)    It shall be at all times kept in good repair and properly painted.

"(8)    No more than one building shall be erected on any lot, nor shall any building be erected thereon, any part of which shall be within 10 feet of the sideline of the lot on which the same is located.    Boathouses shall be deemed to be within the term (building).    All garages must be erected as a part of or

immediately adjoining the house on the lot. No old building shall be moved onto any lot, nor shall any cottage or dwelling be erected on any lot whose cost shall be less than $2,500, nor shall any store or other salesrooms, or place for the transaction of business, be erected or maintained on any lot excepting those lots which may be reserved by the owner of the subdivision for business purposes.

"(9) No lots shall be sold, or rented to, or occupied by any persons of Jewish or Negro descent."

The lot purchased and acquired by plaintiffs in pursuance of this deed faces Cass lake drive, which is 50 feet wide, and between plaintiffs' lot 44 and Cass lake lie lots 36 and 37. On lots 36 and 37 defendants have erected a signboard 50.7 feet long and 10 feet wide, the top of which is 12 feet 2 inches above the ground. This sets back from Cass lake drive approximately 60 feet. Defendants have also caused to be erected what is designated as the Cass-Sylvan Lakes Beach Clubhouse, a frame building approximately 76.3 feet long and 35 feet in width. This building stands on lots 32, 33, and 34, approximately 80 feet back from Cass Lake drive and between that and Cass lake. East and south of this clubhouse is a pump house 20 x 24 feet, which stands on lot 34. Plaintiffs claim the erection and maintenance of the signboard, above described, and this clubhouse and pump house constitutes trespass upon their rights to the property on which they stand, and file this bill of complaint to abate them.

Plaintiffs' rights depend upon their deed. No principle is more sacred than that a man shall be compelled to perform his contract. *Leech* v. *Schweder,* 9 Ch. App. Cas. 463. Said Sir George Jessel:

"It is clearly established by authority that there is sufficient to justify the court interfering if there

has been a breach of the covenant. It is not for the court, but the plaintiffs, to estimate the amount of damage that arises from the injury inflicted upon them. The moment the court finds that there has been a breach of the covenant, that is an injury, and the court has no right to measure it, and no right to refuse to the plaintiff the specific performance of his contract." *Leech* v. *Schweder, supra,* 468, note.

"If the construction of the instrument be clear and the breach clear, then it is not a question of damage, but the mere circumstance of the breach of covenant affords sufficient ground for the court to interfere by injunction." *Tipping* v. *Eckersley,* 2 Kay & Johns. 264, 270 (69 Eng. Repr. 779).

"It is therefore, in my opinion, a matter of no moment in this case, that the plaintiffs have given no evidence of any actual damage done to them. * * * Having established that the acts of the defendants are a violation of the contract entered into between them and the plaintiffs, and a violation of the act of parliament passed to carry such contract into effect, the plaintiffs are entitled to call upon this court to protect them in the enjoyment of that right which they have so purchased, and this court is bound to preserve it from being broken in upon." *Dickenson* v. *The Grand Junction Canal Co.,* 15 Beav. 260, 271 (51 Eng. Repr. 538).

"I am of opinion that the plaintiff, because he has not complained of certain breaches of covenant, which, in my opinion, have inflicted no injury upon him, has not thereby debarred himself from complaining of a breach which does affect the value of his property." *Western* v. *MacDermot,* L. R. 1 Eq. Cas. 499, 508.

"It has been suggested that there has been such an acquiescence on the part of the plaintiff as entirely bars his right. But, as I have observed during

the argument, in order that the defendant should succeed in that contention, the burden of which, of course, rests on him, he must show such a course of acquiescence as forever to preclude the plaintiff from insisting on his right under the agreement." *Evans* v. *Davis,* L. R. 10 Ch. Div. 747, 764.

The grant is not of a mere right of passage limited or to be limited and defined by the court as in ordinary easement cases. It is a grant of a perpetual use —a grant of an interest in and title in common with the owners and occupants of all the other lots in the subdivision to the 19 lots named—in passing to Cass lake, Sylvan lake and Clinton river. If a mere right of way or easement to reach the waters of Cass lake, Sylvan lake and Clinton river was intended, it would not have been necessary to name the 19 different lots mentioned in the deed. An examination of the deed, the restrictions contained therein, the lots named to which building restrictions were applied, the character of the land as then platted, the representations made by the owners through their selling agents to plaintiffs as to what was to be done with the land, the advertising matter issued with the approval of the owners of the property, the circular reading, "Private Park—Cass lake frontage reserved for use of lot owners," the provisions of the deed that the above nine restrictions and conditions are not only binding on the parties thereto, but are made for the benefit of and may be enforced by any of the owners of the land in said subdivision, indicate that it was originally intended the lots specified were not to be built upon. The correspondence of the defendant Meyering Land Company, which acquired this property, indicates it understood the purchasers of the lots had rights which they could not, without violating their contracts, infringe upon.

July 12, 1925, Meyering Land Company sent plaintiff W. E. Kirby a letter of conveyance to be executed which recited that:

"In order to release from operation and effect that portion of the restrictions and conditions contained in contract for the purchase by the undersigned of lot in Beachland subdivision * * * such restrictions pertaining to the perpetual use in common with other lot owners in said subdivision of lots * * * consideration of the sum of one dollar and other considerations, the receipt whereof is hereby acknowledged, the undersigned does by these presents grant, bargain, sell, remise and release and forever quitclaim unto the Meyering Land Company or to its assigns, all those pieces and parcels of land situate in the said county of Oakland, State of Michigan, and more particularly described as lots."

July 21, 1925, it wrote to him it intended to build a clubhouse and improve these lots, representing: "This will in no way detract from your lot but it should increase its value very materially."

August 1, 1925, it wrote him that on June 12th,

"We wrote you regarding our plans for the development of a tract of land in our Beachland subdivision. We inclosed a release which we requested that you sign and return to us which gave us the privilege to improve this property according to the plans which we mentioned in this letter."

October 29, 1925, and November 5, 1925, it wrote him about *his club* which it had erected upon land where it knew it had no business to erect it. July 10, 1926, it wrote him:

"It (was) necessary to secure from various former purchasers of Beachland subdivision a release of their interest in the lots in question."

It inclosed, under date of July 10, 1926, a release for execution by plaintiffs which contained the language:

"In consideration of the sum of one dollar and other valuable consideration, the receipt whereof is hereby acknowledged, I, the undersigned, hereby release and quitclaim to the Meyering Land Company any and all interest pertaining to the use in common with other lot owners in and to lots No. 24 to No. 40 or any part thereof, of Beachland subdivision, Oakland county, Michigan, according to the plat thereof as recorded in said Oakland county records."

If defendants were right in this, if they had not sold the property in pursuance of a plan which contemplated these lots were to be a private park to be used in common by all the lot owners, they would not have taken the trouble to have had this correspondence or made the many requests for quitclaim deeds. It was not necessary for plaintiffs to quitclaim what they did not own. Defendants understood plaintiffs had rights which it was necessary to secure, and these are substantially what plaintiffs seek to protect.

In *Hills* v. *Miller,* 3 Paige's Ch. (N. Y.) 254 (24 Am. Dec. 218), plaintiff purchased a lot facing a triangular piece of land which it was agreed should be public property. Subsequently the triangular piece was quitclaimed to the trustees of a church who threatened to build upon it. Plaintiffs sought an injunction. The chancellor said (p. 256):

"It was an easement or privilege annexed to those lands; and if he had reconveyed the whole of the land to Bostwick, his right to recover for a breach of the condition of the bond would have become extinct. (3 Kent's Commentaries, 449, Erskine's Principles of the Law of Scotland, 218, 227.) The right thus

granted was the servitude *non officiendi luminibus vel prospectui* of the Roman law, or the right of the owner of the lands to which it is appurtenant to restrain the owner of the servient tenement from making any erection thereon which may injure the light or prospect of the dominant tenement, or any part thereof. Rights of this description, denominated predial servitudes in the civil law, and by our law termed easements, are attached to the estate, and not to the person of the owner of the dominant tenement; and they follow that estate into the hands of the assignee thereof. So, on the other hand, they are a charge upon the estate or property of the servient tenement, and follow it into the hands of any person to whom such tenement or any part thereof is subsequently conveyed."

In *Hayes* v. *Railroad Co.*, 51 N. J. Eq. 345, it is held that contracts like that here involved will be enforced whether denominated covenants, conditions, reservations, exceptions, or restrictions, whether running with the land or not. The question is (p. 349):

"Not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract."

As pointed out by Chief Justice Beasley in *Brewer* v. *Marshall,* 4 C. E. Gr. (19 N. J. Eq.) 537, 543 (97 Am. Dec. 679):

"It will be found, upon examination, that these decisions proceed upon the principle of preventing a party having knowledge of the just rights of another, from defeating such rights, and not upon the idea that the engagements enforced create easements or are of a nature to run with the land."

It is claimed plaintiffs knew defendants had violated the terms of the contract of purchase when

they accepted the deed, and, having knowledge the rights in dispute were incumbered when they accepted their deed, cannot now be heard to complain. No parol proof is admissible in an action upon covenants to show an existing incumbrance was to be regarded as no incumbrance. It is as usual, and certainly as competent, to covenant against known as unknown incumbrances or defects in title. The purchaser is not called upon to exercise diligence, but has a right to rely upon the covenants of the deed. That a purchaser has notice of an incumbrance is frequently the very reason for taking a covenant within the scope of which the incumbrance is included. *Edwards* v. *Clark,* 83 Mich. 246 (10 L. R. A. 659); *Lavey* v. *Graessle,* 245 Mich. 681 (64 A. L. R. 1477).

One who purchases land facing on a public square laid out and established is entitled to an injunction to restrain the erection of private buildings thereon (*Rutherford* v. *Taylor,* 38 Mo. 315); or the inclosure of any part of it (*Wheeler* v. *Bedford,* 54 Conn. 244 [7 Atl. 22]); or the diversion of its use to other purposes (*Village of Princeville* v. *Auten,* 77 Ill. 325). One who has purchased land facing on a courthouse square is entitled to an injunction to restrain the erection of a jail thereon. *County of Harris* v. *Taylor,* 58 Tex. 690. One who has purchased land facing a public park is entitled to an injunction to restrain incumbering the same with buildings. *City of Chicago* v. *Ward,* 169 Ill. 392 (48 N. E. 927, 38 L. R. A. 849, 61 Am. St. Rep. 185).

"When privileges of a public nature are also beneficial to private property, as in the case of land upon a public square, the enjoyment of them will be protected from encroachments by injunction." Joyce on Injunctions, § 1024.

"Story in his work on Equity Jurisprudence, § 927, in describing the cases where injunctions will be granted, among other things says: 'Where privileges of a public nature and yet beneficial to private estates, are secured to the proprietors contiguous to public squares, or other places dedicated to public uses, the due enjoyment of them will be protected against encroachments by injunction.'" *Wheeler v. Bedford, supra.*

"Every man has a right to the enjoyment of his property undisturbed by another, and to be protected in that enjoyment; and, what one may consider of little value, another may esteem very highly. The court will not, in cases of this kind, be governed by dollars and cents alone, but will inquire whether the injury is of such a nature that it can reasonably be supposed to lessen materially the enjoyment of property by its owner." *White* v. *Forbes,* Walk. Ch. (Mich.) 112.

The property of plaintiffs is resort property. Beachland subdivision was laid out as resort property contiguous to Cass lake.

"These lakes and ponds are scattered over almost all parts of the State; they impart to the landscape the charm of picturesque scenery; their banks are often selected as favorite sites for residence, and command a high price; these considerations entered into the original purchase from the government, and every subsequent purchase. Much, and in many cases most, of the value of these locations, and of the residences upon them, consists in the beauty of the prospect which the lakes afford." *Rice* v. *Ruddiman,* 10 Mich. 125.

In cases like that involved here,

"The great weight of the authorities supports the doctrine that in such case mere delay and acquies-

cence will not defeat the remedy, unless it has continued so long as to defeat the right itself.'' *Longton* v. *Stedman,* 182 Mich. 405, 415.

We may not balance the expense of defendants against the violation of plaintiffs' rights.

''The fact that it would be of great expense to the defendants compared with the injury to complainants, therefore, does not appear and is of no consequence, if it were true. The restrictions in the deeds have been violated. The amount of damages complainants have suffered is wholly immaterial. Such restrictions will be enforced.'' *Longton* v. *Stedman, supra,* 414.

Nor is plaintiff compelled to seek a remedy in an action at law.

''The violation of complainants' rights by the erection of a permanent structure obstructing an easement and right of way created by deed will be relieved by injunction in a court of equity.'' *Longton* v. *Stedman, supra,* 414.

Defendants made the contract, deeded the property, and accepted the money therefor; then violated the contract, infringed upon the rights conveyed, and deliberately breached the covenants of their own deed. Their acts were high-handed, illegal, and void as against plaintiffs' rights. Decree should be reversed, with costs, and decree entered for plaintiffs.

FEAD, J. The owner's claimed expressions of intention, representations, or promises that the lake front lots would be improved as a park, that no buildings would be erected on them, that plaintiffs' view of the lake would be unobstructed and their summer home quiet and peaceful, undisturbed by the nocturnal revelry of a clubhouse and the parking of many cars, made to plaintiffs when they bought,

were not incorporated in the deed. In October, 1925, plaintiffs knew they had been breached by the completion of the clubhouse. They did not rescind, claim fraud, nor make objection. They paid the balance of the purchase price, about two-thirds, during the next three years, and obtained a deed in 1928. Controversy regarding the form of the deed was settled by plaintiffs obtaining the kind they demanded. No request was made that the early promises be incorporated in it. This is not a suit for reformation nor rescission. Plaintiffs' right to relief rests wholly upon the terms of the deed, not at all upon the early promises.

The deed must be construed as it reads. The easement granted by it cannot create another or different easement for the benefit of plaintiffs. 9 R. C. L. pp. 784, 785.

The deed does not expressly prohibit buildings on the lake lots. On the contrary it contemplates buildings by providing:

"All buildings erected or located on lots 1–40, inclusive, shall face upon Cass lake or Clinton river as the case may be."

The lake front lots, 24 to 40, inclusive, constitute a single piece of land between the road and the lake, although, having been platted, it was necessary to describe them as lots. The grant is of "perpetual use * * * in passing to and from" the lake and river, in common with all other owners. If, as needs be, the irrelevant early promises are excluded from consideration, it seems obvious that the grant was of way or right of passage over the tract and does not include other use.

"The grantor of the easement of a right of way may use the way in any manner he sees fit, provided he does not unreasonably interfere with the gran-

tee's reasonable use in passing to and fro. The own-
er of the right of way has the right to a reasonably
unobstructed passage at all times, and also such
rights as are incident or necessary to the enjoyment
of such right of passage." *Murphy Chair Co.* v.
*American Radiator Co.,* 172 Mich. 14.

See, also, *Grinnell Bros.* v. *Brown,* 205 Mich. 134,
138.

"A grant or reservation of an easement in general
terms is limited to a use such as is reasonably neces-
sary and convenient, and as little burdensome to the
servient estate as possible for the use contemplated.
In other words, an unlimited conveyance of an ease-
ment is in law a grant of unlimited reasonable use."
9 R. C. L. p. 787.

Does the grant mean that plaintiffs have wholly
unobstructed right of way or passage over every
inch of every lot described? If so, the grantor could
not plant a tree, provide playground equipment for
children, construct bathing or boating facilities, or
build anything which would require the grantees to
turn aside in passing to the lake. The alternative
is that the grant be construed reasonably. The
space for passage to the lake is unobstructed in front
of plaintiffs' lot for its whole width of 50 feet, and,
in addition, for about 75 feet on one side and 200 feet
on the other. The lots upon which the clubhouse
is built have ample space, both in front and rear, to
permit passage. The clubhouse is for the benefit of
all lot owners and is not such a private appropria-
tion of the lots on which it is located as restricts
passage over the unoccupied portion of them. The
clubhouse does not require plaintiffs to turn aside
from a straight course to reach any part of the lake
or river as much as would a park, beautified with
lawns, fountains, gardens, bushes, and trees, or as
would an ordinary resort development, with the

paraphernalia for the amusement of adults and children.

Unless the construction first mentioned be adopted, or it be held that plaintiff's right of way created other easements, and, in my opinion, neither is tenable, the clubhouse does not violate the grant because it does not interfere with a reasonable way or passage between plaintiffs' lot and the lake or river.

In circuit court it was agreed that the signboard should be removed, and it was eliminated from the case.

Decree is affirmed, with costs.

CLARK, C. J., and McDONALD, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred with FEAD, J.