*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT PICHULO,

        Plaintiff-Appellee,

v

BUCKEYE PIPELINE COMPANY, LP,

        Defendant-Appellant.

UNPUBLISHED
February 14, 2019

No. 341264
Genesee Circuit Court
LC No. 15-104998-CZ

Before: MURRAY, C.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

In this action regarding rights pursuant to an easement, defendant appeals as of right the trial court's judgment in favor of plaintiff after a bench trial permanently enjoining defendant from removing 13 trees from plaintiff's property. Previously, the trial court denied defendant's motion for summary disposition, which defendant also appeals. We affirm.

## I. BACKGROUND FACTS & PROCEDURAL HISTORY

Plaintiff owns property in Mount Morris Township, which he purchased in 1992. In 1959, the previous owners of the subject property granted defendant an easement to construct and maintain an oil pipeline across the property. Plaintiff was aware of the easement when he purchased the property. In June of 2015, defendant sent a letter to plaintiff informing him of defendant's intent to remove 13 Norway maple trees that were on the easement. Defendant asserted that the trees had to be removed because they obstructed aerial surveillance of and access to the pipeline in case of an emergency or for repairs. In response, plaintiff filed this suit seeking a permanent injunction. Plaintiff also sought an emergency ex-parte temporary restraining order, which the trial court granted, and a preliminary injunction pending trial. After an evidentiary hearing regarding plaintiff's motion for a preliminary injunction, the trial court ordered that all underbrush be removed from the easement and the branches on the Norway maples trimmed to provide a 10-foot clearance.

The following year, defendant moved for summary disposition of plaintiff's complaint, arguing that it was entitled to remove the trees as a matter of law. Plaintiff responded that there remained questions of fact regarding whether the removal was reasonably necessary for

defendant's use of the easement. The trial court agreed with plaintiff, cited differing expert and pilot witness testimony, and denied the motion.

Over the course of the four-day trial that followed, the trial court heard testimony from plaintiff regarding the value of the trees to him; pilots regarding their ability to see the pipeline and surrounding easement after the clearing of underbrush and pruning of the trees; an expert who estimated that the trees were older than the pipeline, grew shallow roots, and had a monetary value of nearly $50,000; and experts in oil pipeline regulation, maintenance, and safety who disagreed about whether defendant's proposed plan to remove the trees was reasonably necessary for defendant's enjoyment of the easement. The trial court considered the evidence and in a written opinion found plaintiff's evidence to be more credible and convincing, resulting in a finding that removal of the Norway maples was not reasonably necessary. Consequently, the trial court permanently enjoined defendant from removing them. This appeal followed.

## II. SUMMARY DISPOSITION

Defendant argues that it was entitled to remove the trees under the terms of the easement as a matter of law, so the trial court erred in denying defendant's motion for summary disposition. We disagree.

## A. STANDARD OF REVIEW

"This Court [] reviews de novo decisions on motions for summary disposition brought under MCR 2.116(C)(10)." *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). A motion for summary disposition pursuant to MCR 2.116(C)(10) "tests the factual sufficiency of the complaint." *Joseph v Auto Club Ins Assoc*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is proper where there is no "genuine issue regarding any material fact." *Id.* A trial court's decision regarding equitable issues, such as those pertaining to the enforcement of easements, is reviewed de novo. *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005). However, "[t]he extent of a party's rights under an easement is a question of fact . . . ." *Id.* Similarly, "[t]he scope and extent of an easement is generally a question of fact . . . ." *Morse v Colitti*, 317 Mich App 526, 534; 896 NW2d 15 (2016) (quotation marks omitted).

## B. APPLICABLE LAW

"An easement is a right to use the land burdened by the easement rather than a right to occupy and possess [the land] as does an estate owner." *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 130; 737 NW2d 782 (2007) (quotation marks omitted). "The existence of an easement necessitates a thoughtful balancing of the grantor's property rights and the grantee's privilege to burden the grantor's estate." *Blackhawk Dev*, 473 Mich at 41. "Accordingly, an easement . . . is generally confined to a specific purpose." *Mich Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 378-379; 699 NW2d 272 (2005). When considering the scope of an easement, this Court "must discern the parties' intent

as shown by the plain language of the [legal document]." *Id*. at 379-380. "Where the language of [an easement] is plain and unambiguous, it is to be enforced as written and no further inquiry is permitted." *Little v Kin*, 468 Mich 699, 700; 664 NW2d 749 (2003). "If the text of the easement is ambiguous, extrinsic evidence may be considered by the trial court in order to determine the scope of the easement." *Id*.

"The use of an easement must be confined to the purposes for which it was granted, including any rights incident to or necessary for the reasonable and proper enjoyment of the easement, which are exercised with as little burden as possible to the fee owner of the land." *Schumacher*, 275 Mich App at 131. "Stated differently, [i]t is an established principle that the conveyance of an easement gives to the grantee all such rights as are incident or necessary to the reasonable and proper enjoyment of the easement." *Blackhawk Dev*, 473 Mich at 41-42 (quotation marks omitted). "Under our well-established easement jurisprudence, the dominant estate may not make improvements to the servient estate if such improvements are unnecessary for the effective use of the easement or they unreasonably burden the servient tenement." *Little*, 468 Mich at 701. Thus, in sum, a trial court must first decide whether the easement allows for the proposed improvement by analyzing the plain language of the agreement, if unambiguous, or by referring to extrinsic evidence in the event of ambiguous language. See *id*. at 700-701. Then, if the easement does allow for such, the court "must then determine (1) whether the [proposed improvement] is necessary for [the grantee's] effective use of their easement and (2) whether the [proposed improvement] unreasonably burdens [the grantor's] servient estate." *Id*. at 701.

## C. ANALYSIS

Defendant argues that there is no question of fact regarding whether it was permitted to cut down the 13 maple trees under the terms of the easement. In relevant part, the easement provides that defendant has "a right of way over and through" the subject property "for the purpose of constructing . . . and maintaining and operating, one . . . line of pipe for the transportation of petroleum, gas, or the products of either, . . . with free ingress and egress to construct, operate, maintain, and, from time to time, alter, repair or remove the same." By its plain language, the easement gave defendant a "right of way" and "free ingress and egress," for the purpose of constructing, maintaining, operating, altering, repairing, or removing the pipeline.[1]

---

[1] Contrary to the trial court's holding after trial, the language used in the easement is not ambiguous. The trial court seems to have confused the difference between ambiguous language and a situation where the "application of the [language] to a given set of facts," could reasonably lead to different conclusions. See *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 354-355, 357-358; 596 NW2d 190 (1999). Because the terms primarily at issue in this case—maintaining, operating, and repairing—have "commonly used meanings," they are not ambiguous. See *id*. at 354.; see also *Blackhawk Dev*, 473 Mich at 43 (holding that use of the word "improving" in an easement was not ambiguous because "[t]here [was] nothing technical or unique about the word," and in the context used there was nothing "that would require us to rely on anything other than its common sense meaning."). Consequently, in order to determine if

This Court previously has considered the word "maintenance" in an easement with respect to the dominant estate's request to remove trees from a right of way. *Panhandle Eastern Pipe Line Co v Musselman*, 257 Mich App 477; 668 NW2d 418 (2003). The *Panhandle Eastern* panel held that the dominant estate holder generally had the right to clear "the property [of trees] to ensure maintenance and inspection." *Id*. at 486. This Court concluded that "[m]aintenance includes maintaining the property in the appropriate condition so that it is accessible in the event that repair of the pipeline is required." *Id*. at 486 n 3. The record reflects that defendant's request to remove the trees in the instant case is, at least in part, for the same reason—to ensure that the property is accessible for maintenance, should repairs one day be required. Thus, pursuant to the Court's holding in *Panhandle Eastern*, 257 Mich App at 486, defendant's proposed actions fall within the authority provided by the easement with respect to "maintenance."

Defendant argues that this conclusion required the trial court to grant summary disposition in its favor. Defendant is incorrect because, as discussed *supra*, a court also is required to consider "(1) whether the [proposed improvement] is necessary for [the grantee's] effective use of their easement and (2) whether the [proposed improvement] unreasonably burdens [the grantor's] servient estate." *Little*, 468 Mich at 701. Those questions, which are in regard to the extent and scope of the easement, generally are questions of fact. See *Blackhawk Dev*, 473 Mich at 40; see also *Morse*, 317 Mich App at 534. Indeed, even in *Panhandle Eastern*, 257 Mich App at 487, this Court remanded to the trial court for it to develop the record, reasoning that factual "[q]uestions remain with regard to the extent of the obstruction of the right-of-way."

Those same factual questions remain in this case. To wit, plaintiff and defendant presented competing testimonial and documentary evidence regarding whether aerial surveillance of or access to the pipeline was unreasonably obstructed by the trees. Thus, there remained a question of fact as to the extent of the burden presented by the trees and their roots with respect to potential emergencies and repairs. See *Blackhawk Dev*, 473 Mich at 40; see also *Morse*, 317 Mich App at 534. In light of such questions of fact to be decided at a trial, summary disposition properly was denied. See *Maiden*, 461 Mich at 120.

## II. BENCH TRIAL

Defendant argues that we must reverse the permanent injunction in this case because the trial court improperly applied the standard for granting an injunction and clearly erred in finding that removal of the trees was not reasonably necessary for defendant's use of the easement. We disagree.

## A. STANDARDS OF REVIEW

---

defendant's proposed action is permitted under the easement, this Court must only consider the easement's language. *Little*, 468 Mich at 700.

A trial court's decision regarding equitable issues, such as those regarding easements, is reviewed de novo. *Blackhawk Dev*, 473 Mich at 40. "The scope and extent of an easement is generally a question of fact that is reviewed for clear error on appeal." *Morse*, 317 Mich App at 534 (quotation marks omitted). "A finding of fact is clearly erroneous when no evidence supports the finding or, on the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 31; 896 NW2d 39 (2016) (quotation marks omitted). "A trial court's decision to grant or deny injunctive relief is reviewed for an abuse of discretion." *Janet Travis, Inc v Preka Holdings, LLC*, 306 Mich App 266, 274; 856 NW2d 206 (2014). "An abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Sanders v McLaren-Macomb*, 323 Mich App 254, 264; 916 NW2d 305 (2018) (brackets and quotation marks omitted).

## B.  THE EASEMENT

First, defendant argues that the trial court clearly erred when it made factual findings regarding defendant's rights under the easement.

## 1.  APPLICABLE LAW

As discussed, *supra*, "[a]n easement is a right to use the land burdened by the easement rather than a right to occupy and possess [the land] as does an estate owner." *Schumacher*, 275 Mich App at 130 (quotation marks omitted). That use, however, "is generally confined to a specific purpose." *Carmody-Lahti Real Estate*, 472 Mich at 378-379. Germane to this case, defendant has the right to "free ingress and egress" to maintain and operate its oil products pipeline. Defendant's right to conduct maintenance "includes maintaining the property in the appropriate condition so that it is accessible in the event that repair of the pipeline is required." *Panhandle Eastern*, 257 Mich App at 486 n 3. Operation of the pipeline also includes clearing vegetation to ensure an ability to perform aerial inspection. See *id*. at 486. Here, the trial court was required to decide, under the facts of this case, "(1) whether the [removal of the trees] is necessary for [defendant's] effective use of their easement and (2) whether the [removal of the trees] unreasonably burdens [plaintiff's] servient estate." *Little*, 468 Mich at 701. "Of course, the need to answer the second question is obviated where the first question is answered in the negative." *Blackhawk Dev*, 473 Mich at 42.

The trial court first had to determine whether cutting down the 13 Norway maple trees was necessary for defendant's maintenance, operation, and inspection of the pipeline. See *id*. This is because "[a] fundamental principle of easement law is that the easement holder . . . cannot make improvements to the servient estate if such improvements are unnecessary for the effective use of the easement . . . ." *Id*. at 41 (quotation marks omitted). Thus, " '[t]he use exercised by the holders of the easement must be reasonably necessary and convenient to the proper enjoyment of the easement . . . .' " *Id*. at 42, quoting *Unverzagt v Miller*, 306 Mich 260, 265; 10 NW2d 849 (1943) (alteration in *Blackhawk Dev*). To allow otherwise would improperly permit the dominant estate to "materially increase[] the burden on plaintiff's servient estate by imposing new burdens that were not contemplated at the time of the easement grant, contrary to general easement principles." *Blackhawk Dev*, 473 Mich at 47. "Where the rights to an easement are conveyed by grant, neither party can alter the easement without the other party's

-5-

consent." *Id*. at 46-47, citing *Douglas v Jordan*, 232 Mich 283, 287; 205 NW 52 (1925). Importantly, the easement's reference to a "right of way" and "free ingress and egress," includes the right to have a " 'reasonably unobstructed passage at all times . . . .' " *Kirby v Meyering Land Co*, 260 Mich 156, 169; 244 NW 433 (1932), quoting *Murphy Chair Co v American Radiator Co*, 172 Mich 14, 29; 137 NW 791 (1912). In essence, the easement does not provide defendant with the authority to clear reasonable obstructions. See *Kirby*, 260 Mich at 169. Thus, the ultimate, factual question for the trial court to consider was whether the Norway maples amount to an *unreasonable* obstruction or danger to the pipeline. See *id*.

2. ANALYSIS

Defendant gives three reasons as to why the Norway maples have to be removed: (1) access to the right-of-way and the pipeline; (2) ability to respond to emergencies as they arise; and (3) the roots themselves are risks to the pipe. With respect to the first issue, defendant presented testimony from expert William Byrd that the trees and their roots inhibited defendant's access to the pipeline. Byrd asserted that the machinery required to excavate the pipeline would not fit and could not operate on the easement with the trees there, especially because defendant was required to abide by OSHA standards for safe trenches. Byrd opined that removal of the trees was reasonably necessary for future maintenance and that such actions were common in the oil pipeline industry. Plaintiff contradicted that evidence with testimony from his own expert Richard Kuprewicz. He concluded that removal of the trees was not reasonably necessary in anticipation of potential maintenance. Kuprewicz testified that the federal regulations did not declare a set width for pipe excavation and opined that removal of the trees to access the pipeline when the time for such maintenance came would not significantly extend the time required to perform such excavation, should the need arise.

The trial court considered that evidence and found plaintiff's expert witness more credible. In its written opinion, the trial court specifically cited as credible Kuprewicz's testimony that there was adequate space to access the pipeline and that the potential requirement to remove the trees before performing such excavation would not cause a significant delay. We "give deference to the trial court's superior ability to judge the credibility of the witnesses who appeared before it." *Gomez*, 318 Mich App at 37 (quotation marks omitted), citing MCR 2.613(C). Given this Court's deference to the trial court's credibility determinations and that the trial court's factual findings relied on an expert witness's testimony, defendant has failed to provide any reason for us to be "left with a definite and firm conviction that a mistake has been made." *Id*. at 31 (quotation marks omitted). Thus, the trial court did not clearly err in finding that the removal of the Norway maple trees was not reasonably necessary for defendant's proper use of the easement to access for future maintenance. See *id*.[2]

---

[2] It is important to note that it is not disputed that there was no maintenance then or now required on the pipeline. Rather, defendant contends that its rights to "free ingress and egress" and a "right of way" under the easement extend to the removal of the trees in anticipation of such future maintenance. The distinction is important because an action to preserve or repair the pipeline is treated with less scrutiny than one to improve the land. *Mumrow v Riddle*, 67 Mich

Defendant also argues that the trial court clearly erred by finding that it is not permitted to remove the trees in anticipation of a future emergency. In support of that contention at trial, defendant introduced testimony from its senior right-of-way agent, Martin White, and Byrd that the Norway maples would present a significant burden both in identifying an emergency and accessing the pipeline in case of an emergency. As to the first portion, Byrd testified that sensors in the pipeline allow for operators to narrow down the location of a potential leak, but do not allow an exact determination. Instead, the fastest way for a pipeline operator to identify the exact location is to perform aerial surveillance of the pipeline to look for ground stains or dead vegetation at the location of the leak. Defendant noted that its patrol pilot had testified and provided photographs showing that his aerial view of the pipeline and easement were obstructed by the trees. With respect to accessing the pipeline in the event of an emergency, Byrd testified that time is of the essence when leaks occurred and that the trees would significantly delay defendant's ability to properly access the pipeline. Byrd noted that federal regulations required defendant to prepare an emergency plan and follow it. He testified that defendant already has such a plan, but to carry it out, defendant has to remove the trees in question. Further, bringing large machines on the property to do so, which Byrd described as being ignition sources, was dangerous and could cause an explosion.

Plaintiff presented evidence to contradict defendant's claims. Plaintiff elicited testimony from another pilot that the easement around the pipeline plainly was visible when flying past the property at the proper angle. Plaintiff also admitted photographs into evidence showing an unobstructed view of the pipeline, which is identified on the photographs by the presence of yellow tape. Kuprewicz, meanwhile, testified that in cases of emergency, it would be entirely improper and unsafe to rush to the scene of the leak with large machinery and to begin excavation. Instead, Kuprewicz stated that the pipeline had internal sensors that allowed for the identification of leaks in general areas, which could then be isolated and the flow of oil products through that area stopped. This effectively reduced the amount of environmental contamination without having to rush in with dangerous machinery. Further, as to time of access, Kuprewicz testified that removing the trees during the course of the emergency would not provide any delay to the excavation of the pipeline. While Kuprewicz agreed with Byrd that federal regulations required an emergency plan, Kuprewicz disagreed that the regulations required removal of any trees. Byrd later clarified his testimony on the issue and stated that the federal regulations require an emergency plan to be in place, but the federal regulations do not require removal of trees.

The trial court considered the evidence and found plaintiff's to be more credible. With respect to locating an emergency via aerial surveillance, the trial court relied on the pilot's photographs and testimony establishing that the pipeline was visible. Because the trial court's

App 693, 700; 242 NW2d 489 (1976). Here, the trial court relied on that distinction by noting that defendant had not produced evidence that maintenance was required and essentially allowed for the inference that, if such maintenance were required then the trees could possibly be removed. See *id*.

decision on this issue relied on admissible and compelling evidence in the record, it was not clearly erroneous. See *Gomez*, 318 Mich App at 31.

Next, the trial court credited plaintiff expert Kuprewicz's testimony that the presence of the trees would not slow down access to the pipeline or cause danger to the response team. The trial court also accepted Kuprewicz's testimony that defendant's emergency procedures did not transform its request to remove the trees into a reasonable necessity. Given our deference to the trial court's credibility determinations and decision to believe Kuprewicz instead of defendant expert Byrd, and the trial court's reliance on admitted evidence, the record presented does not provide any reason for us to be "left with a definite and firm conviction that a mistake has been made." *Id*. at 31 (quotation marks omitted). Thus, based on the facts as found by the trial court, defendant's request to remove the Norway maple trees was not reasonably necessary for defendant to prepare for an emergency. See *Blackhawk Dev*, 473 Mich at 42.

Defendant also argues that the trees had to be removed because their roots presented a danger to the pipeline. In support of that, Byrd testified that tree roots acted as conduits for electricity, so they could cause lightning to strike the pipeline. In addition, defendant presented evidence that the roots potentially could grow toward and eventually chip away at the pipes. Lastly, Byrd testified that the tree roots could entangle the pipeline, causing damage. On cross-examination, Byrd acknowledged that he was aware lightning strikes could happen but did not know of any specific examples. Plaintiff countered with expert testimony from an arborist who testified that the root system of a Norway maple stays in the top 10 inches of soil, which is above the pipeline. Kuprewicz opined that the proper procedure to detect such erosion is for a pipeline operator to use an internal monitoring system. This allows for analysis of both internal and external corrosion of the pipe, and for the assessment and removal of risks to the pipeline *as they arise*. He testified that pipeline operators are not required by any regulation to remove the possibility of any potential risk that might arise in the future. As to the tree roots and potential pipeline erosion, plaintiff expert Kuprewicz clarified that the pipeline's cathodic protection would be able to provide a timely alert that a tree root was encroaching on the pipeline and, if that failed, other tools can be used to identify external corrosion of the pipeline. These systems, he testified, allowed defendant to address actual threats to the pipeline when they arose without any significant added dangers.

Here, the trial court again considered the documentary and testimonial evidence provided by the parties and found plaintiff's evidence more credible. The trial court weighed heavily the fact that defendant expert Byrd could not identify any particular instance where a lighting strike on a pipeline had been conducted by a tree root. Considering that evidence in light of the arborist's testimony that the tree roots did not go as deep as the pipeline and Kuprewicz's testimony that defendant would be alerted to any encroaching root in a timely manner, the trial court found that removal of the trees was not reasonably necessary for defendant's maintenance of the pipeline. See *Blackhawk Dev*, 473 Mich at 42. Because we must defer to the trial court's decision to credit Kuprewicz's testimony instead of Byrd's, and because the trial court's factual findings were based on evidence produced at trial, the trial court did not clearly err. See *Gomez*, 318 Mich App at 31.

In sum, defendant asserted that the Norway maple trees had to be removed because they were a danger to the pipeline and an obstruction to surveillance and access. Defendant's

contentions rely on a misapplication of the law in Michigan with regard to easements. Defendant, under the terms of the easement at issue here, does not have the right to ensure freedom from any and all obstructions or dangers to the pipeline. That simply is not the standard for such inquiries. See *Kirby*, 260 Mich at 169. Instead, defendant's rights under the easement are limited to freedom from unreasonable obstructions or dangers. See *id*. The extent, or reasonableness, of the obstruction presented by the trees is a fact question for the trial court to decide and it did so here. *Morse*, 317 Mich App at 534. The trial court, after considering all of the evidence and weighing the credibility of the witnesses, decided that removal of the Norway maple trees was not reasonably necessary for defendant's maintenance, operation, or repair of the pipeline. As this was not clear error, we affirm. See *Blackhawk Dev*, 473 Mich at 42.

## C. THE PERMANENT INJUNCTION

Defendant argues that the trial court abused its discretion by issuing the permanent injunction because it was not a proper remedy where plaintiff: (1) had a legal remedy available; (2) loss of the trees was not irreparable; and (3) a weighing of the harms between the parties and the risk to public safety should have favored defendant.

## 1. APPLICABLE LAW

We previously summarized the law regarding permanent injunctions in *Wiggins v City of Burton*, 291 Mich App 532, 558-560; 805 NW2d 517 (2011):

> It is true that " '[i]njunctive relief is an extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable injury,' " and that "[g]ranting injunctive relief is within the sound discretion of the trial court." *Kernen v Homestead Dev Co*, 232 Mich App 503, 509; 591 NW2d 369 (1998), quoting *Jeffrey v Clinton Twp*, 195 Mich App 260, 263-264; 489 NW2d 211 (1992). The general rule " 'is that the court will balance the benefit of an injunction to plaintiff against the inconvenience and damage to defendant, and grant an injunction or award damages as seems most consistent with justice and equity under all the circumstances of the case.' " *Kratze v. Indep Order of Oddfellows*, 442 Mich 136, 143 n 7; 500 NW2d 115 (1993) (*Kratze II*), quoting *Hasselbring*[ *v Koepke*], 263 Mich [466,] 480[; 248 NW 869 (1933)]. But "a court is not bound to engage in a balancing of the relative hardships and equities if the encroachment resulted from an intentional or wilful act . . . ." *Kratze II*, 442 Mich at 145.

"While an injunction may lie when a tort is merely threatened . . . a cause of action for damages will not." *Kernen*, 232 Mich App at 509 (citations omitted). "When an injury is irreparable, the interference is of a permanent or continuous character, or the remedy at law will not afford adequate relief, a bill for an injunction is an appropriate remedy." *Schadewald v Brule*, 225 Mich App 26, 40; 570 NW2d 788 (1997).

## 2. ANALYSIS

Defendant argues that the trial court erred in granting injunctive relief in favor of plaintiff because the harm to plaintiff was reparable in the form of monetary damages, a legal remedy.

Defendant is correct that plaintiff's expert testified that the Norway maples had an established monetary value based on their health and age. However, defendant is incorrect that the fact that an object has monetary value automatically rules out the availability of a permanent injunction. To wit, permanent injunctions are permitted not only "[w]hen an injury is irreparable," but also when "the interference is of a permanent or continuous character, or the remedy at law will not afford *adequate* relief . . . ." *Id*. (emphasis added). Thus, proof that monetary damages would not be adequate, or that there would be a permanent interference also could warrant an injunction. *Id*. Here, the trial court credited testimony from plaintiff that the trees had a sentimental value to him and that no amount of money would satisfy his loss. Further, the trial court noted that removal of the trees would have been permanent, because they reasonably could not be replaced, considering the arborist's testimony that the trees were quite old and took over 70 years to grow.

Additionally, when a tort merely is threatened, the proper remedy is for an injunction, not for damages. *Kernen*, 232 Mich App at 509. "[A]ctivities by the owner of the dominant estate that go beyond the reasonable exercise of the use granted by the easement may constitute a trespass to the owner of the servient estate." *Wiggins*, 291 Mich App at 556 (quotation marks omitted). As discussed, *supra*, the trial court did not clearly err in determining that removal of the trees was not reasonably necessary to defendant's use of the easement. Thus, plaintiff also showed that defendant was threatening to commit a trespass or, in other words, a tort. See *id*. Consequently, injunctive relief was the proper remedy. See *Kernen*, 232 Mich App at 509.

Defendant also argues that the trial court erred in failing to weigh properly the potential harms to plaintiff, defendant, and the public. Once again, defendant is correct that, typically, a trial court is required to "balance the benefit of an injunction to plaintiff against the inconvenience and damage to defendant," and only issue an injunction if it would be "consistent with justice and equity under all the circumstances of the case." *Wiggins*, 291 Mich App at 559 (quotation marks omitted). However, as our Supreme Court held in *Kratze II*, 442 Mich at 145, such balancing is not required where a trespass could result "from an intentional or wilful act . . . ." Here, defendant has not made any qualms that it specifically intends to remove the 13 Norway maples. Therefore, defendant's proposed action was intentional and willful. See *id*.; see also *Wiggins*, 291 Mich App at 556. Even assuming that the trial court did not properly balance the harms, such error was inconsequential where the trial court was not required to do so. *Kratze II*, 442 Mich at 145.

Affirmed.[3]

/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan

---

[3] Interestingly, defendant has not argued on appeal, like it did before the trial court, that the extent of the injunction was impermissibly broad, considering it did not contain an avenue for defendant to remove the trees in case of an actual emergency or the need for actual repairs. Instead, the trial court only allowed for defendant to remove trees if they died and defendant obtained an order from the trial court. The trial court should acknowledge that the permanent injunction is limited to the extent that defendant would be permitted to remove the trees for an actual emergency or to repair damage to the pipeline. See *Janet Travis*, 306 Mich App at 274 ("The decision to grant injunctive relief must be tailored to the facts of the particular case.")