*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANTHONY L. WOODMANSEE,

        Plaintiff/Counterdefendant-Appellee,

v

WILLIAM SCHMIDT,

        Defendant/Counterplaintiff/Third-
        Party Plaintiff-Appellant,

and

STEPHEN MEISENBACH and CHERYL
WOODMANSEE,

        Third-Party Defendants-Appellees,

and

FIDELITY NATIONAL TITLE CO.,

        Third-Party Defendant.

UNPUBLISHED
November 10, 2022

No. 357954
Barry Circuit Court
LC No. 2020-000276-CZ

Before: SAWYER, P.J., and MARKEY and SWARTZLE, JJ.

PER CURIAM.

In this easement dispute involving riparian rights, the trial court determined that real property owned by defendant, William Schmidt, was burdened by an easement appurtenant for the benefit of a neighboring property owned by plaintiff, Anthony L. Woodmansee. The trial court also determined that the scope of the easement permitted access to the lake as well as allowing additional recreational activities. The trial court ordered defendant to pay $6,000 in damages, including treble damages, for the destruction of plaintiff's docks. On reconsideration, the trial court eliminated the award of treble damages, reducing the damage award to $2,000. Defendant appeals by right. We affirm.

-1-

## I. BASIC FACTS AND PROCEDURAL HISTORY

This easement dispute involves two neighboring parcels of land, 1200 Iroquois Trail, which is currently owned by defendant, and 1175 Hammond Road,[1] which is currently owned by plaintiff. The parcels are neighboring plots near Algonquin Lake. Notably, although the majority of defendant's property does not touch the water, defendant's property includes a long narrow strip— a sort of panhandle—that runs from the main area of his property to Algonquin Lake. At the southern end of the strip owned by defendant, at the shore of the lake, the strip is approximately 17.5 feet wide. Defendant is, in short, a riparian[2] owner with 17.5 feet of lakefront footage. In contrast, plaintiff's property does not touch the lake at any point. Plaintiff's property does, however, connect with defendant's panhandle strip that runs to the lake. The main questions in this case are whether plaintiff's property has an easement over the strip and, if so, what the scope of that easement entails.

Although there are currently two adjoining properties, historically the parcels were one property, most recently under the ownership of Stephen Meisenbach, who obtained ownership in 2003 following the his mother's death. In 2005, Meisenbach split the property into two parcels, and he sold 1200 Iroquois, i.e., the property now owned by defendant, to Meisenbach's cousin, our plaintiff. When he divided the parcels, Meisenbach retained the second parcel—1175 Hammond—for himself. Critical to the current dispute is the fact that the 2005 deed indicated that the property that Meisenbach conveyed to plaintiff was: "SUBJECT TO AN EASEMENT FOR ACCESS TO ALGONQUIN LAKE AND FOR RECREATIONAL PURPOSES DESCRIBED SEPARATELY." The 2005 deed also contained a metes-and-bounds description of the easement, describing the panhandle strip that runs to the lake.

Plaintiff owned 1200 Iroquois until 2018 when he lost the property to foreclosure. Following the foreclosure, in July 2019, defendant purchased the property. After he purchased the property, defendant destroyed and disposed of plaintiff's docks, which were in the lake at the end of the strip. Defendant then placed his own dock and boatlift in the water, utilizing 14.5 feet of the 17.5-foot lakeshore line.

Meanwhile, in 2017, Meisenbach sold a $^1/_3$ interest in 1175 Hammond to plaintiff. The associated 2017 deed of conveyance mentioned the easement for access to Algonquin Lake and recreational purposes. In 2020, after the foreclosure on 1200 Iroquois, Meisenbach conveyed the remaining $^2/_3$ interest in 1175 Hammond to plaintiff. The 2020 deed also mentioned the easement to Algonquin Lake and contained a detailed list of recreational activities. In short, as of 2020,

---

[1] This property only recently obtained an address. But, for ease of discussion, we shall refer to the property throughout this opinion as 1175 Hammond, even though at the time of some of the events in question the property did not actually have an address.

[2] "More accurately, land that includes or borders a river is defined as riparian, while land that includes or borders a lake is defined as littoral." *Morse v Colitti*, 317 Mich App 526, 536 n 6; 896 NW2d 15 (2016). But the term "riparian" is often used in both contexts, see *id*., and it will be used in this opinion even though the property at issue is technically littoral.

plaintiff owned the entire 1175 Hammond property, and since 2019, defendant has owned 1200 Iroquois.

In May 2020, plaintiff filed the current lawsuit against defendant alleging a quiet-title claim and a request for damages caused by the malicious destruction of property. Plaintiff alleged that he was entitled to an easement allowing for lake access over defendant's strip of land and giving plaintiff the right to engage in recreational activities on the strip. Plaintiff also sought damages for defendant's destruction of his docks. Defendant then filed a combined counterclaim and third-party complaint. The counterclaim was, of course, brought against plaintiff. The third-party complaint was brought against plaintiff's wife, Cheryl Woodmansee,[3] and Meisenbach. Defendant sought to quiet title to the property in his name, free from any easement. He also alleged slander of title and trespass.

Before trial, when denying defendant's motion for partial summary disposition and granting partial summary disposition to plaintiff under MCR 2.116(I)(2), the trial court concluded that the 2005 deed conveying the 1200 Iroquois property from Meisenbach to plaintiff created an easement appurtenant for the benefit of 1175 Hammond and that, at a minimum, this easement unambiguously included "access" to Algonquin Lake. The trial court found ambiguity, however, in the phrase "recreational purposes," concluding that a trial was needed to resolve this ambiguity.

The case proceeded to a two-day bench trial, during which the trial court heard testimony from plaintiff, defendant, Cheryl, Meisenbach, several of the Woodmansees's friends who were familiar with the historical use of the strip, and the Rutland Township Zoning Administrator. The parties also presented various exhibits, including deeds, surveys, and photographs. At the close of proofs, with respect to the scope of the easement, the trial court again concluded that an easement appurtenant existed and that this easement unambiguously included "access" to the lake. Taking into consideration the circumstances existing at the time of the creation of the easement in 2005 to determine the meaning of the ambiguous phrase "recreational purposes," the trial court found that "recreational purposes" encompassed rights to have a bench on the easement, to lounge at the lakeshore, to host gatherings and have bonfires (but not to maintain a permanent fire pit), and to maintain a dock (but not to permanently moor boats in the water). Having determined the scope of the easement, the trial court also specifically concluded that the placement of defendant's dock and boatlift, as currently configured to consume 14.5 feet of the 17.5-foot shoreline, was *not* reasonable, even if the easement only included access to the lake, because reasonable access to the lake could not be had with only three feet of lakeshore. The trial court initially awarded plaintiff $6,000 in treble damages for the destruction of his docks, although on reconsideration the court concluded that treble damages were unwarranted. The trial court therefore reduced the damage award to $2,000. Defendant now appeals to this Court.

## II. THE EASEMENT

---

[3] Cheryl is not included in the deeds related to the properties, but she had resided at 1200 Iroquois with plaintiff and now lives with him at 1175 Hammond.

On appeal, defendant argues that the trial court erred by concluding that an easement appurtenant existed for the benefit of plaintiff's property because the 2005 deed purporting to create the easement lacked sufficient information regarding reservation of an easement and the identity of the dominant estate. Alternatively, defendant asserts that he should have been considered a bona fide purchaser and that, as such, he was entitled to take the property free from the easement. Even if an easement existed, defendant contends that the trial court erred by determining that the scope of the easement included recreational activities in addition to access to the lake and by determining that defendant's dock and boatlift unreasonably interfered with plaintiff's access to the lake.

## A. STANDARDS OF REVIEW

Following a bench trial, the trial court's findings of fact are reviewed for clear error, and the court's conclusions of law are reviewed de novo. *Charles A Murray Trust v Futrell*, 303 Mich App 28, 50; 840 NW2d 775 (2013). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted). "[B]ecause deeds are contracts, the interpretation of their language is an issue of law, which this Court reviews de novo." *Penrose v McCullough*, 308 Mich App 145, 147; 862 NW2d 674 (2014). "The extent of a party's rights under an easement is a question of fact[.]" *Blackhawk Dev Corp v Village of Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005). Likewise, when there is a dispute regarding the reasonableness of a property owner's use of land burdened by an easement, whether the owner's use is proper and reasonable poses a question of fact. *Smith v Straughn*, 331 Mich App 209, 216; 952 NW2d 521 (2020). "A trial court's dispositional ruling on equitable matters, however, is subject to review de novo." *Blackhawk Dev Corp*, 473 Mich at 40. To the extent defendant challenges rulings made by the trial court at the summary-disposition stage of the proceedings, we review de novo a trial court's ruling on a motion for summary disposition. *Penrose*, 308 Mich App at 147.

## B. CREATION OF THE EASEMENT

Contrary to defendant's arguments, the trial court did not err by finding that the 2005 deed created an easement and by concluding that the easement was appurtenant for the benefit of the adjoining parcel, namely 1175 Hammond.

"An easement is the right to use the land of another for a specified purpose, and an easement may be created by express grant, by reservation or exception, or by covenant or agreement." *Bayberry Group, Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 399; 964 NW2d 846 (2020) (quotation marks and citation omitted). The statute of frauds applies to the creation of easements, meaning that "[i]n order to create an express easement, there must be language in the writing manifesting a clear intent to create a servitude." *Forge v Smith*, 458 Mich 198, 205; 580 NW2d 876 (1998). "[When] the intent to create an easement is not clear, the issue is to be resolved in favor of use of the land free of an easement." *Id*. at 209.

In this case, the initial question is whether the 2005 deed, in which Meisenbach conveyed 1200 Iroquois to plaintiff, created an easement appurtenant for the benefit of 1175 Hammond. When interpreting a deed, the objective "is to give effect to the parties' intent as manifested in the

language of the instrument." *Mich Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 370; 699 NW2d 272 (2005). To this end:

> (1) In construing a deed of conveyance[,] the first and fundamental inquiry must be the intent of the parties as expressed in the language thereof; (2) in arriving at the intent of parties as expressed in the instrument, consideration must be given to the whole [of the deed] and to each and every part of it; (3) no language in the instrument may be needlessly rejected as meaningless, but, if possible, all the language of a deed must be harmonized and construed so as to make all of it meaningful; (4) the only purpose of rules of construction of conveyances is to enable the court to reach the probable intent of the parties when it is not otherwise ascertainable. [*Id.* (quotation marks and citation omitted; alterations in original).]

Careless use of words in a deed will not defeat the clear intentions of the parties. *Peck v McClelland*, 247 Mich 369, 370; 225 NW 514 (1929).

In the 2005 deed, Meisenbach conveyed 1200 Iroquois to plaintiff "subject to an easement for access to Algonquin Lake and for recreational purposes described separately." The deed also contained a metes-and-bounds description of the easement. Contrary to defendant's arguments on appeal, this language clearly manifested an intent, in writing, to create an easement. See *Forge*, 458 Mich at 205. In disputing the efficacy of this language, defendant challenges the use of the phrase "subject to," asserting that language such as "reserving" an easement should have instead been used. There are, however, no "magic words" required to create an easement, *Tomecek v Bavas*, 482 Mich 484, 490; 759 NW2d 178 (2008), and arguably careless or clumsy phrasing will not defeat the clear intentions of the parties, see *Peck*, 247 Mich at 370. See also *Woodington v Shokoohi*, 288 Mich App 352, 374; 792 NW2d 63 (2010) ("If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous."). Even if the phrase "subject to" is somewhat inartful,[4] when the 2005 deed is read as a whole, the parties' intent is clear. The 2005 deed contained information regarding the parameters of the easement, both in terms of the uses of the easement and its physical description. And in transferring the 1200 Iroquois property to plaintiff subject to this new easement, Meisenbach's intent to claim an easement was readily apparent. See *Chapdelaine v Sochocki*, 247 Mich App 167, 170; 635 NW2d 339 (2001) ("It is not necessary that the party reserving the easement right use any particular words as long as the intent to claim an easement is apparent and it is described sufficiently so that the easement and the parcel of land to which the right is attached can be determined, using parol evidence if necessary."). Frankly, there is no logical interpretation of the easement language in

---

[4] The potential problem with "subject to" language is that it can be read to refer to some preexisting encumbrance rather than to create a new encumbrance. See Bruce & Ely, The Law of Easements & Licenses in Land, Express Reservation of Exception—Use of "Subject To" Language, § 3:8 (2020) (recognizing that "subject to" language in a deed has been held sufficient in some cases to reserve an easement, but recommending that such language not be employed because it is more "commonly used in a deed to refer to existing easements, liens, and real covenants that the grantor wishes to exclude from warranties of title"). In this case, however, the 2005 deed described a new easement, and there is no preexisting easement to confuse matters.

the 2005 deed other than that the parties clearly intended to create the easement described in the deed. In contrast, defendant proposes wholly ignoring this language and rendering this portion of the deed entirely meaningless, contrary to the basic rules for interpreting a deed. See *Mich Dep't of Natural Resources*, 472 Mich at 370 ("[N]o language in the instrument may be needlessly rejected as meaningless."). Instead, when the 2005 deed is read as a whole, it is clear that the parties manifested their intent to create an easement, and the trial court did not err by finding that an express easement had been created. See *Forge*, 458 Mich at 205.

Moreover, under Michigan law and contrary to defendant's argument, failure to expressly identify a dominant estate is not fatal to the creation of an easement appurtenant. That is, defendant contends on appeal that, absent a specific reference to the dominant estate—in this case 1175 Hammond—the easement should fail entirely or, at most, the easement should be construed as being personal to Meisenbach.[5] Relevant to defendant's argument in this regard:

> Michigan courts recognize two types of easements: easements appurtenant and easements in gross. An appurtenant easement attaches to the land and is incapable of existence apart from the land to which it is annexed. An easement in gross is one benefiting a particular person and not a particular piece of land. [*Penrose*, 308 Mich App at 148 (quotation marks and citations omitted).]

"Michigan law favors easements appurtenant over easements in gross." *Id*. That is, "[a]n easement will never be presumed to be a personal right where it can be construed as appurtenant to some estate, notwithstanding the silence of the deed." *Akers v Baril*, 300 Mich 619, 623; 2 NW2d 791 (1942). "Whether an easement is in gross or appurtenant must be determined by the fair interpretation of the grant or reservation creating the easement, aided if necessary by the situation of the property and the surrounding circumstances." *von Meding v Strahl*, 319 Mich 598, 610; 30 NW2d 363 (1948). See also Bruce & Ely, The Law of Easements & Licenses in Land, Appurtenant/In Gross Dichotomy, § 2:3 (2020) ("[When] an easement is created by express language, the nature of the servitude is determined by the intention of the parties, as ascertained from the grant in light of surrounding circumstances at the time of the conveyance."). For example:

> [When] owner conveys part of his land and reserves an easement over it, without specifying that such easement is to be appurtenant to land retained by him, the surrounding circumstances, including the adjacency of the way to the land retained, may be considered by the court in order to ascertain the intention that the easement was intended to be appurtenant thereto. [*Akers*, 300 Mich at 624.]

"[W]hen the reservation of an easement naturally operates to enhance the value of the other adjacent lands of the grantor, this is a strong circumstance to indicate that it was intended to be

---

[5] Because Meisenbach has since transferred 1175 Hammond to plaintiff, if the easement were to be construed as being "in gross," the easement would no longer exist because easements in gross are personal rights that are not assignable. See generally *Stockdale v Yerden*, 220 Mich 444, 447-448; 190 NW 225 (1922).

appurtenant to the estate, and not merely personal to the grantor." *Smith v Dennedy*, 224 Mich 378, 382; 194 NW 998 (1923).

In this case, as discussed, the 2005 deed clearly expressed Meisenbach's intent to claim an easement when conveying 1200 Iroquois to plaintiff. The only question remaining is whether he intended that easement for himself or the benefit of the property—1175 Hammond—that he had retained for himself at the time. Looking first to the language of the deed, although the deed does not expressly identify a dominant estate, there is also nothing in the deed to suggest that the easement was intended to be "in gross" for Meisenbach's personal benefit. The deed, in short, does not express whether the easement was appurtenant, meaning that it is appropriate to consider the surrounding circumstances.[6] See *von Meding*, 319 Mich at 610; *Chapdelaine*, 247 Mich App at 170. Considering the surrounding circumstances, the facts show that Meisenbach owned one property, which he divided into two parcels, transferring 1200 Iroquois to plaintiff while retaining the remaining, adjoining property for himself. And, at the time of the split, by virtue of the 2005 deed, Meisenbach created an easement over the property conveyed to plaintiff, providing a pathway from 1175 Hammond to Algonquin Lake. In this context, particularly when the easement to allow lake access will enhance the value of the property retained by Meisenbach, the easement is properly construed as appurtenant to the adjoining parcel and not a personal easement for Meisenbach. See *Smith*, 224 Mich at 382; see also *Choals v Plummer*, 353 Mich 64, 71; 90 NW2d 851 (1958) ("Under the circumstances it was quite natural that the grantor should have reserved rights of way for the benefit of the property lying west of, and contiguous to, the parcel conveyed."). In short, the trial court did not err by concluding that the 2005 deed created an easement and by ruling that the easement was appurtenant for the benefit of the adjoining parcel, namely 1175 Hammond.

## C. BONA FIDE PURCHASER

Even if the 2005 deed created an easement, defendant asserts that he is a bona fide purchaser because the easement was not expressly mentioned in latter documents in the 1200 Iroquois chain of title, including a mortgage recorded in 2007, a 2018 Sheriff's Deed

---

[6] On appeal, defendant relies on non-Michigan authority which stands for the proposition that failure to identify a dominant estate is fatal to the creation of an easement appurtenant. See, e.g., *Bos Terra, LP v Beers*, 380 Mont 109, 114; 354 P3d 572 (2015); *Maywood-Proviso State Bank v Village of Lisle*, 234 Ill App 3d 206, 218-220; 599 NE2d 481 (1992); *Branch v Occhionero*, 239 Conn 199, 204; 681 A2d 306 (1996). These authorities, however, are nonbinding. See *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 726 n 5; 957 NW2d 858 (2020). More importantly, these nonbinding authorities on which defendant relies are not consistent with the law in Michigan. For 100 years, Michigan law has favored appurtenant easements over easements in gross, and under Michigan Supreme Court precedent, when a deed is silent on whether an appurtenant easement was intended, it is appropriate to look to the surrounding circumstances. See *Akers*, 300 Mich at 624. In contrast to the nonbinding authority defendant cites, this Court is bound to follow Michigan Supreme Court precedent. See *Associated Builders & Contractors v Lansing*, 499 Mich 177, 191; 880 NW2d 765 (2016).

transferring the property to the Federal Home Loan Mortgage Corporation, and defendant's 2019 deed.[7] This argument lacks merit.

"In general, Michigan is a race-notice state under MCL 565.29, wherein the owner of an interest in land can protect his or her interest by properly recording it, and the first to record an interest typically has priority over subsequent purchasers or interest holders." *Wells Fargo Bank, NA v SBC IV REO, LLC*, 318 Mich App 72, 96; 896 NW2d 821 (2016). More fully, MCL 565.29 states:

Every conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded. The fact that such first recorded conveyance is in the form or contains the terms of a deed of quit-claim and release shall not affect the question of good faith of such subsequent purchaser, or be of itself notice to him of any unrecorded conveyance of the same real estate or any part thereof.

"Under MCL 565.29, a bona fide or good-faith purchaser for value of an interest in real property may take priority over a prior conveyed interest." *Wells Fargo Bank, NA*, 318 Mich App at 110. "[A] good-faith purchaser is one who purchases without notice of any defect in the vendor's title." *Penrose*, 308 Mich App at 152. In this context, "notice" can be "actual or constructive." *Richards v Tibaldi*, 272 Mich App 522, 539; 726 NW2d 770 (2006). "A person who has notice of a possible defect in a vendor's title and fails to make further inquiry into the possible rights of a third-party is not a good-faith purchaser and is chargeable with notice of what such inquiries and the exercise of ordinary caution would have disclosed." *Royce v Duthler*, 209 Mich App 682, 690; 531 NW2d 817 (1995). As explained by this Court:

Notice is whatever is sufficient to direct attention of the purchaser of realty to prior rights or equities of a third party and to enable him to ascertain their nature by inquiry. Notice need only be of the possibility of the rights of another, not positive knowledge of those rights. Notice must be of such facts that would lead any honest man, using ordinary caution, to make further inquiries in the possible rights of another in the property. [*Id*. (quotation marks and citation omitted).]

Significant to the current facts, constructive notice also includes "imputed notice to a person regarding all matters properly of record." *Wells Fargo Bank, NA*, 318 Mich App at 110. In other words, it is a long-established, "well-settled principle of law, that a grantee is chargeable with

---

[7] Although the documents did not specifically refer to the 2005 easement, the 2007 mortgage contained a property description that included the following: "BY FEE SIMPLE DEED FROM STEPHEN J. MEISENBACH AS SET FORTH IN INSTRUMENT NO. 1145842 AND RECORDED ON 5/3/2005. BARRY COUNTY RECORDS." And defendant's 2019 deed specified that the conveyance was "[s]ubject to easements, building and use restrictions, and restrictive covenants of record, if any."

notice of whatever appears in the chain of title through which he claims." *Kerschensteiner v Northern Mich Land Co*, 244 Mich 403, 435; 221 NW 322 (1928) (quotation marks and citation omitted).

In this case, as discussed, the easement in question appears in the 2005 deed related to the 1200 Iroquois property. That 2005 deed was duly recorded and appears in defendant's chain of title. He is, therefore, chargeable with constructive notice of the easement. See *id*.; *Wells Fargo Bank, NA*, 318 Mich App at 110. For defendant to claim that he lacked constructive notice of an easement set forth in a deed recorded in his own chain of title[8] is frankly spurious and wholly at odds with Michigan's race-notice scheme.

In nevertheless attempting to establish that he had neither actual nor constructive notice, defendant again argues that the 2005 deed lacked specificity regarding the creation of an easement. As already discussed, the 2005 deed clearly manifested the parties' intent to create an easement, and defendant's arguments in this regard lack merit. Moreover, for purposes of defendant's bona fide purchaser argument, defendant is chargeable with notice of the contents of the 2005 deed. At a *minimum*, the deed's reference to an easement for lake access and recreational purposes—with a description of the easement over the path leading to the lake—would have alerted any reasonable person to the possible rights of others, and any honest person, exercising ordinary caution, would have made further investigation. See *Richards*, 272 Mich App at 539; *Royce*, 209 Mich App at 690. Defendant, however, made no effort to investigate, and having failed to make adequate inquiry into his own chain of title, he cannot be allowed to claim that he is a bona fide purchaser. In short, the 2005 deed in defendant's chain of title is fatal to defendant's bona-fide-purchaser argument, and in these circumstances, the trial court did not err by concluding that defendant was not a bona fide purchaser.

## D. SCOPE AND USE OF THE EASEMENT

We also find no error in the trial court's factual conclusions regarding the scope of the easement and whether defendant's dock and boatlift constituted an unreasonable interference with plaintiff's right to access the lake.

As noted, "[a]n easement is a limited property interest; it is the right to use the land burdened by the easement for a specific purpose." *Smith*, 331 Mich App at 215. To determine the

---

[8] On appeal, plaintiff also argues that the 2017 deed conveying a 1/3 interest in the 1175 Hammond property from Meisenbach to plaintiff should be seen to provide notice to defendant because this deed also mentioned the easement. This argument is somewhat less compelling because, unlike the 2005 deed, the 2017 deed is not in defendant's chain of title. See *Meacham v Blaess*, 141 Mich 258, 260; 104 NW 579 (1905) ("The record of deeds not in their chain of title was no notice to them."). We need not decide this issue, however, because it is clear that defendant is chargeable with knowledge of the 2005 deed in his chain of title. Similarly, to the extent that plaintiff argues that the real estate listing for the property afforded defendant notice, it is unnecessary to address whether the real estate listing—noting "shared access" to the lake—provided defendant with constructive notice of the easement because such notice was clearly given by the 2005 deed.

scope of an easement, courts must look first to the text of the easement. *Little v Kin*, 468 Mich 699, 700; 664 NW2d 749 (2003). When the language of the easement "is plain and unambiguous, it is to be enforced as written and no further inquiry is permitted." *Id*. "If the text of the easement is ambiguous, extrinsic evidence may be considered by the trial court in order to determine the scope of the easement." *Id*. "[T]he use of an easement must be confined strictly to the purposes for which it was granted or reserved." *Blackhawk Dev Corp*, 473 Mich at 41 (quotation marks and citation omitted).

The easement in this case implicates riparian rights. Owners of riparian land, i.e., land that includes or is bounded by water, "enjoy certain exclusive rights, including the rights to erect and maintain docks and to permanently anchor boats off the shore." *Morse v Colitti*, 317 Mich App 526, 536; 896 NW2d 15 (2016). "[F]ull riparian rights and ownership may not be severed from riparian land and transferred to nonriparian backlot owners," but "Michigan law clearly allows the original owner of riparian property to grant an easement to backlot owners to enjoy certain rights that are traditionally regarded as exclusively riparian." *Dyball v Lennox*, 260 Mich App 698, 706; 680 NW2d 522 (2004) (quotation marks and citation omitted). "Reservation of a right of way for access does not give rise to riparian rights, but only a right of way." *Id*. When there is a right of access to a lake, the access includes the right to use the water to swim, fish, wade, and boat, as well as the right to use the easement to transport a boat to the water and to temporarily moor a boat. See *id*. at 706-707. An easement for access, however, does not include full riparian rights, and in particular, would not include, for example, the right to keep a dock in the water, the right to sun bathe on the shore of the property, or the right to permanently moor a boat in the water. See *id*. at 707.

In this case, the 2005 deed indicated that there was an easement for "access" to Algonquin Lake *and* for "recreational purposes." The meaning of "access" to Algonquin Lake is quite clear, and it plainly provided the easement holder with the right to access the lake and to enjoy the waters, including the rights to swim, fish, wade, boat, transport a boat to the water, and to temporarily moor a boat in the water. See *id*. at 706-707. But an easement for access does *not* include riparian rights and would not grant the easement holder the right to lounge on the property or maintain a dock. See *id*. at 707.

But in this case, as recognized by the trial court, the easement at issue provided for something more than "access" to the lake. This easement was also created for "recreational purposes." Recognizing that the phrase "recreational purposes" is reasonably susceptible to numerous interpretations, the trial court concluded that the term was ambiguous. See *Island Lake Arbors Condo Ass'n v Meisner & Assoc, PC*, 301 Mich App 384, 392; 837 NW2d 439 (2013). And because the scope of the easement was ambiguous, the trial court looked to extrinsic evidence to determine the easement's scope. See *Little*, 468 Mich at 700. On appeal, defendant concedes that if an easement exists, the language "recreational purposes" is ambiguous, making it appropriate to consider extrinsic evidence to determine the full scope of the easement.

Although defendant agrees with the trial court's approach and the trial court's consideration of extrinsic evidence, he takes issue with the court's factual findings. Defendant contends that the testimonies of Meisenbach and the Woodmansees were self-serving and should be disregarded. He also argues that the trial court erred by considering the Woodmansees's activities when they were the owners of 1200 Iroquois and by failing to solely consider

-10-

Meisenbach's activities while he owned 1175 Hammond and used the easement over 1200 Iroquois.

Contrary to defendant's arguments, there is ample evidence supporting the trial court's factual findings regarding the scope of the easement in this case. The trial court did not clearly err by concluding that "recreational purposes" included having a bench, being able to lounge at the lakeshore, hosting gatherings and bonfires (but not maintaining a permanent fire pit), and maintaining a dock (but not being able to permanently moor boats in the water). In this regard, the trial court heard testimony from Meisenbach about his activities on the easement strip before and after the 2005 transfer to plaintiff. Describing his use of the properties before the conveyance, Meisenbach explained that he used the disputed strip for access to the lake, to fish, to swim, to have gatherings of friends and family on the lakeshore, to have bonfires, to watch fireworks, and often just to sit on a bench near the shore to watch the water or a sunset. Meisenbach had a dock in the water, and though he often brought his boat on shore to prevent it from filling with water, he did sometimes temporarily leave the boat in the water. He also had friends visit and use the easement to put their jet skis or boats in the water. Meisenbach and the Woodmansees all agreed that these were Meisenbach's activities with regard to the strip leading to the lake and all agreed that these were the rights that they intended for him to retain with regard to "recreational activities" when he reserved an easement in the 2005 deed. According to Meisenbach, the Woodmansees, and, to a lesser extent, other visitors to the property, Meisenbach did in fact use the easement for these purposes after the 2005 conveyance and while he owned 1175 Hammond and plaintiff owned 1200 Iroquois.

On appeal, defendant disputes the credibility of Meisenbach and the Woodmansees, but the credibility of their testimony was a question for the trial court, and we afford particular deference to the trial court's credibility determinations given the court's superior opportunity to judge the credibility of witnesses who appear before it.[9] See *Smith*, 331 Mich App at 215. We see no basis for disturbing the trial court's credibility determinations. Defendant also argues that the trial court improperly considered the Woodmansees's activities as owners rather than focusing on Meisenbach's activities as an easement holder. First of all, to the extent the parties presented the trial court with evidence of the Woodmansees's activities while they owned the strip, defendant in

---

[9] In challenging Meisenbach's credibility, defendant also asserts that Meisenbach came to the trial court with "unclean hands" because he played a role in drafting the 2005 deed, which contains the ambiguous language at issue. Meisenbach did not seek any relief from the trial court, making it challenging to see how an allegation of unclean hands by Meisenbach has any relevance to the dispute between the Woodmansees and defendant. See *Attorney General v Ankersen*, 148 Mich App 524, 544-545; 385 NW2d 658 (1986) ("[The clean hands maxim] is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.") (quotation marks and citation omitted; alteration in original). In any event, that Meisenbach may have played a role in drafting the 2005 deed does not, without more, evince bad faith or an intent to mislead or deceive anyone; at most, the drafting ambiguity suggests negligence or a lack of understanding regarding the drafting of legal documents, certainly nothing that would warrant application of the doctrine of unclean hands. See generally *id*.

-11-

fact questioned the witnesses about the Woodmansees's activities during their ownership of 1200 Iroquois. And he cannot now be heard to complain about the proofs considered when he contributed to the presentation of that evidence. See *Lewis v LeGrow*, 258 Mich App 175, 210; 670 NW2d 675 (2003). Second, and more substantively, the trial court plainly understood the issues before it, and to determine what rights Meisenbach intended to retain for himself, the trial court focused its analysis on Meisenbach's recreational activities before the 2005 transfer and on his use of the easement after the conveyance. The trial court did not, as defendant contends, define the scope of the easement on the basis of the Woodmansees's activities while they were the owners of 1200 Iroquois. Defendant has not demonstrated clear error in the trial court's factual findings and, consequently, we conclude that the trial court did not err in determining the scope of the easement.

In addition to his arguments regarding the scope of the easement, defendant also argues that even if the trial court was correct in its assessment of the scope of the easement, the court erred by concluding that defendant's dock and boatlift configuration constituted an unreasonable interference with plaintiff's use of the easement. Again, defendant has not demonstrated clear error.

When an easement exists, both the servient and dominant estate holders have rights and obligations that require reasonableness by both parties. See *Unverzagt v Miller*, 306 Mich 260, 265; 10 NW2d 849 (1943) ("There must be a due and reasonable enjoyment by both parties—those who hold the dominant right, as well as those who own the fee."). For the purposes granted in the easement, an easement holder possesses "all such rights as are incident or necessary to the reasonable and proper enjoyment of the easement." *Blackhawk Dev Corp*, 473 Mich at 41-42 (quotation marks and citation omitted). At the same time, "[t]he use exercised by the holders of the easement must be reasonably necessary and convenient to the proper enjoyment of the easement, with as little burden as possible to the fee owner of the land." *Id.* at 42 (quotation marks and citation omitted). As compared to the easement holder, "[t]he owner of the fee, subject to an easement, may rightfully use the land for any purpose not inconsistent with the rights of the owner of the easement." *Harvey v Crane*, 85 Mich 316, 322; 48 NW 582 (1891). An owner cannot, for example, erect obstructions or otherwise unreasonably interfere with an easement holder's beneficial use of the easement. See, e.g., *Berkey & Gay Furniture Co v Valley City Milling Co*, 194 Mich 234, 243-244; 160 NW 648 (1916). See also *Kirby v Meyering Land Co*, 260 Mich 156, 169-170; 244 NW 433 (1932) (considering whether building interfered with reasonable use of easement for passage to the lake). "The rights of the owner of the easement are paramount, to the extent of the grant, to those of the owner of the soil." *Harvey*, 85 Mich at 322.

In this case, following his purchase of 1200 Iroquois, defendant erected a dock and boatlift configuration at the end of the easement strip. This configuration monopolized 14.5 feet of a 17.5-foot lakeshore, and the Woodmansees testified that defendant's configuration had in fact interfered with their ability to access the lake. Considering the width of the lakeshore at issue and the size of defendant's configuration, the trial court concluded that defendant's dock and boatlift constituted an unreasonable interference with the Woodmansees's use of the easement, which included access to the lake. That is, the trial court concluded that defendant effectively left the Woodmansees with three feet of lakeshore, which was not enough to allow them reasonable access to the lake. Cf. *Berkey & Gay Furniture Co*, 194 Mich at 243-244 (concluding that an obstruction, narrowing a 30-foot-wide easement to 13 or 14 feet, constituted an unreasonable interference with

-12-

the easement holder's beneficial use of the right-of-way). See also *West Mich Dock & Market Corp v Lakeland Investments*, 210 Mich App 505, 513; 534 NW2d 212 (1995) (recognizing that, as between two parties with riparian rights, one party could not interfere with the other's reasonable use of the waters). The trial court's finding was not clearly erroneous, and defendant is not entitled to relief on appeal. Overall, the trial court did not err in its determination of the scope of the easement or by concluding that defendant had unreasonably interfered with the Woodmansees's access to the lake.

## III. MONETARY DAMAGES

On appeal, defendant also challenges the trial court's award of $2,000 in damages to plaintiff for the destruction of his docks. According to defendant, the docks were abandoned and, accordingly, no damages were warranted. Alternatively, defendant contends that the trial court clearly erred in determining the value of the docks he destroyed. These arguments lack merit.

## A. STANDARDS OF REVIEW

Following a bench trial, this Court reviews a trial court's award of damages for clear error. *Marshall Lasser, PC v George*, 252 Mich App 104, 110; 651 NW2d 158 (2002). "Clear error exists where, after a review of the record, the reviewing court is left with a firm and definite conviction that a mistake has been made." *Id*. Questions of law related to damages, such as whether a particular type of damage is available for a cause of action, are reviewed de novo. *Price v High Pointe Oil Co, Inc*, 493 Mich 238, 242; 828 NW2d 660 (2013).

## B. ABANDONMENT

Defendant's abandonment argument, which he raised for the first time in his motion for reconsideration, is not properly preserved for our review, and it need not be considered. See *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009). Even if considered, defendant's abandonment argument lacks merit.

Abandonment requires two elements: "both an intent to relinquish the property and external acts putting that intention into effect[.]" *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637, 652; 662 NW2d 424 (2003). The party claiming abandonment—in this case defendant—has the burden of proving these elements. *Id*. "Nonuse alone is insufficient to prove abandonment." *Sparling Plastic Indus, Inc v Sparling*, 229 Mich App 704, 718; 583 NW2d 232 (1998).

In this case, defendant argues that the Woodmansees abandoned their docks by leaving them in the water at the end of the strip following the foreclosure on 1200 Iroquois and defendant's purchase of the property. According to defendant, failure to remove the docks constituted abandonment because defendant had disputed the existence of an easement and his attorney sent the Woodmansees a letter telling them to remove their property. In making this argument, defendant relies on unpublished authority from this Court, which he contends stands for the proposition that personal property left behind following a foreclosure may be considered abandoned and that the new owner of the real property may dispose of any property left behind without repercussions. We think the principle at issue is more accurately stated by recognizing that when an owner of personal property "has *no right* to have his or her property on another's

-13-

land and refuses on due notice to remove it, destruction of the property will not be considered a conversion." 6 Michigan Civil Jurisprudence, Conversion, § 22 (emphasis added).

The current case differs from the authority on which defendant relies in one obvious and significant respect: in this case, plaintiff has—and Cheryl informed defendant's attorney that they had—an easement allowing him to maintain a dock in Lake Algonquin. By laying claim to an easement and leaving their docks in the water, the Woodmansees clearly demonstrated an intent *not* to abandon either their easement or their docks. See generally *Emmons v Easter*, 62 Mich App 226, 238; 233 NW2d 239 (1975) (including assertion of "possessory rights," as through litigation, among circumstances supporting that property was *not* abandoned). Moreover, the current lawsuit in fact proved the Woodmansees to be correct; notwithstanding the foreclosure, they have a property right in the form of an easement, and as a result of that easement they may maintain a dock in the water. In short, unlike the cases on which defendant relies, the Woodmansees had no obligation to remove their property, and their failure to do so did not evince abandonment. Indeed, defendant's assertion that the Woodmansees abandoned a dock by asserting a right to an easement and keeping a dock on that easement where they had a legal right to have it, is simply untenable. Defendant is not entitled to relief on this basis.

## C. VALUE DETERMINATION

Lastly, we also conclude that the trial court did not clearly err in its determination of the amount of the Woodmansees's damages related to defendant's destruction of their docks.

"Wanton destruction of another's property represents, perhaps, the ultimate in conversion." 6 Mich Civil Jurisprudence, Conversion, § 22. "The measure of damages for the conversion of personal property is the value of the property at the time of the conversion, in the absence of any testimony establishing a peculiar value in the goods to the owner." *Willis v Ed Hudson Towing, Inc*, 109 Mich App 344, 349; 311 NW2d 776 (1981). "A plaintiff asserting a cause of action has the burden of proving damages with reasonable certainty, and damages predicated on speculation and conjecture are not recoverable." *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 96; 706 NW2d 843 (2005). At the same time, damages are not speculative simply because they cannot be ascertained with mathematical precision. *Id*.

> [T]he law will not demand that a plaintiff show a higher degree of certainty than the nature of the case permits. . . . Thus, when the nature of a case permits only an estimation of damages or a part of the damages with certainty, it is proper to place before the jury all the facts and circumstances which have a tendency to show their probable amount. Furthermore, the certainty requirement is relaxed where damages have been established but the amount of damages remains an open question. [*Id*. at 96-97 (quotation marks and citations omitted).]

The idea that mathematical precision is not required because it is unattainable holds particularly true when "the defendant's own act causes the imprecision." *Willis v Ed Hudson Towing, Inc*, 109 Mich App 344, 350; 311 NW2d 776 (1981). "Public policy demands that, when damages are not susceptible of precise calculation because of an act of the wrongdoer, the risk of giving more than fair compensation be cast upon the wrongdoer." *Id*. When determining value, an owner or purchaser of property is competent to offer testimony about its value. *Id*.; *Duma v Janni*, 26 Mich

-14-

App 445, 452; 182 NW2d 596 (1970). And the credibility of such testimony in a bench trial is an issue for the trial court. *Marshall Lasser, PC*, 252 Mich App at 110.

In this case, defendant totally destroyed and disposed of the Woodmansees's docks. He now claims—and he testified in the trial court—that the docks he destroyed were old, of poor quality, and worth no more than a couple hundred dollars. To support his assertion that similar docks could be had for a couple hundred dollars, defendant presented one Facebook advertisement for a dock. In contrast, Cheryl testified that the docks were in "good" or even "great" condition. With regard to value, the Woodmansees offered evidence of docks of a similar size to the destroyed docks being sold on the open market for $3,568.38. The docks were aluminum, but Cheryl testified that wooden docks are no longer commonly available and that, in any event, there was not a substantial difference in the value of aluminum docks compared to her own wooden docks. With respect to the value of docks in the local market, the trial court also had before it evidence that defendant recently purchased a dock—a dock that was unassembled and not delivered to the property—for $1,749.

Given the evidence presented, defendant has not shown clear error in the trial court's damage determination. To the extent that defendant and Cheryl presented conflicting testimony regarding the condition of the docks that defendant destroyed, the credibility of their respective testimony was a question for the trial court. See *id*. Moreover, the fact that the docks no longer exist for appraisal is wholly a result of defendant's wrongdoing, and when it is clear that defendant's wrongdoing caused damages, a relaxed certainty requirement attaches to the establishment of the amount of damages. See *Health Call of Detroit*, 268 Mich App at 96; *Willis*, 109 Mich App at 350. In this context, without other evidence available, the trial court looked to the market to determine the docks' value, considering both what defendant had recently paid for a dock as well as the estimates obtained by the Woodmansees. There was nothing improper in the trial court's considering market prices as evidence of the docks' value at the time of the conversion, particularly when defendant's destruction of the property precluded more precise methods of valuation. See 90 CJS, Trover and Conversion, § 105 (explaining that relevant evidence of value includes factors bearing on market value of the converted property, such as evidence of the value of "similar property," original cost, condition of the property, replacement costs, etc.).

Weighing the evidence, the trial court rejected the Woodmansees's estimate, which included some add-ons such as "a mud pad" that their own docks did not have, as too high. The trial court also rejected defendant's Facebook $275 advertisement as an unreliable indicator of value, noting that defendant claimed that there were numerous docks for sale on Facebook, but he had been able to present only one such advertisement for a location some distance away. The trial court ultimately concluded that the best estimate of value was what defendant recently paid for his own dock, which was reasonably close in time to when he destroyed the Woodmansees's docks. Weighing all the evidence, the trial court, therefore, ultimately determined $1,750 to be the value of the docks destroyed by defendant.[10] Given the evidence presented, and deferring to the trial

---

[10] In setting the total damages at $2,000, the trial court also added an additional $250 for installation and delivery, noting that the docks destroyed by defendant had been installed in the lake. Defendant does not challenge the award of costs for installation and delivery, and in any

-15-

court's credibility assessments, the court did not clearly err in valuing the docks and determining plaintiff's damages related to defendant's destruction of the docks.

We affirm. Having fully prevailed on appeal, appellees may tax costs under MCR 7.219.


/s/ David H. Sawyer
/s/ Jane E. Markey
/s/ Brock A. Swartzle

---

event, we see no error in the trial court's award of incidental damages, like installation and transportation. See *Central Transp, Inc v Fruehauf Corp*, 139 Mich App 536, 546; 362 NW2d 823 (1984) ("An injured party may recover incidental damages arising from a conversion."); see also Restatement Torts, 2d, § 911, comment *c* (recognizing that, depending on the circumstances, value can include the cost of transportation from the nearest market).